Paul D. Landi, Appellant v. West Chester Area School District and Commonwealth of Pennsylvania, Secretary of Education, Appellees.

Argued February 5, 1976, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*John M. Gallagher, Jr.,* with him *Richard, Brian, DiSanti & Hamilton,* for appellant.

*Lawrence E. MacElree,* with him *Randy L. Sebastian,* and *MacElree, Harvey, Gallagher & Kean,* for appellee, School District.

*Ross A. Urich,* Assistant Attorney General, with him *Edward A. Miller,* Assistant Attorney General, for appellee, Commonwealth.

OPINION BY JUDGE ROGERS, March 5, 1976:

Paul D. Landi, formerly a tenured professional employe of the West Chester Area School District, here appeals from an order of the Secretary of Education sustaining the action of the School Board terminating his contract.

On May 6, 1974 Mr. Landi was a veteran of 16 years of teaching in the public schools of Pennsylvania, the last 11 of which had been served in the West Chester Area School District. The incident which resulted in his being charged with cruelty, a cause of termination provided by Section 1122 of the Public School Code of 1949,[1] occurred on that date. A proper notice of the charge was provided, the School Board conducted a hearing at which Mr. Landi was represented by counsel, the Board determined that the charge had been proved and on appeal the record made by the Board was submitted as the record upon which the Secretary should base his decision.

The Secretary made the following critical findings of fact:

"2. On the afternoon of Monday, May 6, 1974, the appellant's sixth grade students were restless and edgy in anticipation of dismissal which would be occurring within the next 15 minutes; it was a study

---

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1122.

period and the students were free to work as they wished. The Appellant noticed that one student, Donald F., was talking with his classmates instead of studying. The Appellant called Donald to the front of the room and asked him to be quiet and work on his lessons. When Donald returned to his chair, someone said: 'The elephant is angry.' This remark the Appellant understood to be a reference to himself—the Appellant is a large, heavyset man, weighing approximately two hundred thirty pounds and standing six feet one inch tall.

"3. Believing that Donald had made the remark, the Appellant called him back to the front of the room. The Appellant grabbed Donald by the shoulders, shook him, then pushed him into the blackboard causing Donald to hit his head. Donald fell to the floor. The Appellant grabbed Donald by his hair and arm and lifted him to his feet. The Appellant then pushed Donald into the bookcase. Donald hit his head again and fell to the floor. He was crying. The Appellant exclaimed: 'Look at him. He is crying like a baby.'

"4. Shortly after the incident, Appellant dismissed the class but kept Donald in the room. Donald continued to cry until he was released to board the school bus. When the school bus arrived at his home he had to be helped to his home by fellow students. Donald by this time was dizzy and nauseous, he had pain in his head and was vomiting. The Appellant called Donald's mother after school, obstensibly to inform her of her son's bad behavior. Donald's mother told the Appellant that Donald was in a very distressed state and that she was taking him immediately to the hospital to determine if he had sustained any injuries. The Appellant then attempted to contact the principal of the elementary school, Mr. Donald Pitt, and inform him of the details of the incident.

"5. Donald was taken to the hospital that evening. No injury was discovered, except for a redish area on his forehead. Donald's parents were given standard instructions to follow for patients with possible head injuries. One instruction was to awaken Donald every two hours and see if he could coherently answer questions. Donald's head was sore and he had headaches for two weeks after the incident."

The appellant poses three questions for our consideration: (1) whether the punishment inflicted by the appellant on the pupil was so severe as to justify the appellant's termination on the grounds of cruelty, (2) whether, assuming that the punishment was too severe, this single incident justified termination in view of the appellant's long service with the District, and (3) whether the District's refusal to call all of the pupil witnesses of the event, coupled with the District's direction to the appellant not to appear at his place of employment pending the Board's hearing, denied the appellant his right to a full, fair and impartial hearing.

The first question, relating to the severity of the punishment, essentially objects to the sufficiency of the evidence—that is, whether it is substantial. We have declared that the substantial evidence rule:

" 'should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, *could not* have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and it should be set aside.' " *A. P. Weaver & Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 505, 284 A.2d 515, 518 (1971), (quoting from Stason, *"Substantial Evidence" in Ad-*

*ministrative Law,* 89 U. Pa. L.Rev. 1026 (1941)). (Emphasis in original.)

Our careful review of the record convinces us that a reasonable man acting reasonably could have reached the decision made by the Board and the Secretary. Four students present in the classroom during the events of May 6, 1974, in addition to Donald F., described the event. Although, as might be expected, the young witnesses had versions of the occurrence differing in detail, the Secretary's findings represent a fair and supportable amalgam of the whole.

Whether the appellant's conduct constituted cruelty is a matter of law. The Public School Code of 1949 contains no definition of cruelty. In this case, and in *Caffas v. Upper Dauphin Area School District,* 23 Pa. Commonwealth Ct. 578, 353 A.2d 898 (1976), the Secretary provided a definition of his own composition. As we pointed out in *Caffas, supra,* that definition, although awkward, is not plainly erroneous. The Secretary seemed to be concerned because Mr. Landi, although admitting that his pupil may have struck his head on the blackboard and may have been propelled against the bookcase and certainly was in a state of uncontrollable agitation after the incident, nevertheless declared that he did not intend any of these results. As we said in *Caffas, supra,* intention may be inferred from actions.

The answer to the appellant's second question is that a single incident of sufficient severity may justify a charge of cruelty even against a teacher with a long and unsullied record of service. The record demonstrates that the members of the School Board were conscious of this aspect of the case. They put searching questions to all of the witnesses concerning what may have prompted the appellant to have so completely lost his composure and they obtained no satisfactory responses.

While the appellant advances his third point as a Statement of Question Involved, he has not briefed it. A review of the record reveals that there were about 30 children in the classroom on May 6, 1974 and that after the event the principal caused the person in charge of athletic activities to interview those he thought would be the most reliable and fairest witnesses. There were a number of pupils other than those who testified at the hearing place who were available as witnesses but who were not called because it was decided that their testimony would be merely cumulative. The appellant made no objection to the decision that they not be called by the Board nor was he prevented from calling any witnesses he might wish to testify in his own behalf. We find no merit in the appellant's objection that the Board denied him a full, fair and impartial hearing.

### ORDER

AND NOW, this 5th day of March, 1976, the decision of the Secretary of Education is affirmed and the appeal of Paul D. Landi is dismissed.