Wissahickon School District, Petitioner *v.* Marvin McKown, Respondent.

Marvin McKown, Petitioner *v.* Wissahickon School District, Respondent.

Argued March 9, 1979, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Curtis Wright,* with him *Michael O'Hara Peale, Jr.,* and *Timoney, Knox, Hasson & Weand,* for Wissahickon School District.

*Leigh P. Narducci,* with him *Narducci & Signore, P.C.,* for Marvin P. McKown.

OPINION BY JUDGE WILKINSON, JR., April 23, 1979:

The Wissahickon School District here appeals an order of the Secretary of Education (Secretary) which sustained the appeal of Respondent from a decision of the Board of School Directors (Board) dismissing him on the ground of immorality pursuant to Section 1122 of the Public School Code of 1949 (Code).[1] Respondent, successful before the Secretary, has nevertheless, filed an appeal at No. 1201 C.D. 1978 advancing arguments unacceptable to or not reached by the Secretary. We will treat that appeal as a responsive argument on the merits of the Board's appeal.

On June 28, 1977, the Board preferred charges against Respondent alleging that on nine separate oc-

---

[1] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1122.

casions he had engaged in conduct of a sexual and romantic nature with two of his female students over a period of a year beginning in March 1976 and ending in March 1977. Proper notice was provided and the Board conducted five separate hearings commencing July 13, 1977 and ending September 6, 1977. Thereafter, on September 13, 1977, the Board, voting individually on each of the charges found three of the charges alleging sexual intimacy with one student, Tracy, had not been proved, but found by a six to three vote that the six charges of sexual intimacy relating to the student, Karyl, had been proved. On appeal to the Secretary, the record of the hearings was submitted and no further testimony was taken.

The Secretary made the following pertinent findings relative to review here:

4. When Karyl was initially questioned by school officials about her involvement with [Respondent], she denied that anything but a normal teacher-student relationship existed. Later on the same day she alleged that a romantic-physical relationship existed between her and [Respondent]. This same pattern of denial and reversal happened three days later on June 6, 1977.

7. Karyl's direct testimony alleges that [Respondent] had on several occassions kissed and fondled her in the preparation room adjacent to the [Respondent's] science classroom, the adjoining classroom and the hallway.

8. These encounters allegedly took place over the period of one year from March 17, 1976 to March 17, 1977.

. . . .

10. On August 30, 1976 Tracy testified that all the statements she had made regarding a sex-

ual relationship between her and the [Respondent] were untrue. . . .

11. Other than Karyl's testimony, there is no evidence that [Respondent] acted immorally with either Tracy or Karyl.

12. [Respondent] denied all the charges against him.

The Secretary, applying the substantial evidence rule of this Court in *Landi v. West Chester School District,* 23 Pa. Commonwealth Ct. 586, 353 A.2d 895 (1976), concluded that the Board acted unreasonably in relying on the uncorroborated testimony of Respondent's former student, Karyl, because this testimony "appears to have been influenced [by the earlier accusation made by Tracy], is inconsistent, or related to a series of acts that could not have occurred.'' Because we conclude after a reveiw of the entire testimony that a reasonable man acting reasonably might have relied on the student's testimony, *see Landi, supra,* we must reverse the Secretary.

We agree with the Secretary that a careful review of all the testimony, including that of the two students, Tracy's father, who testified that he did not wish his daughter to appear before the Board, and several teachers, who testified as to their access to the teacher's preparation room where the alleged acts occurred, could raise questions about Karyl's credibility, even in the Secretary's words, rising to the level of "reasonable doubt.'' We do not believe, however, that it was within the Secretary's power to substitute her judgment regarding the credibility of this witness for that of the Board.

This Court recently restated the substantial evidence standard applicable to the Secretary's review of a record of testimony taken before the school board where no new evidence is taken by the Secretary in

*Penn-Delco School District v. Urso,* 33 Pa. Common-wealth Ct. 501, 511, 382 A.2d 162, 167 (1978), wherein we noted:

> A finding of the school board that a professional employee was guilty of offending the moral standards of the community by his actions will not be disturbed on appeal when supported by substantial evidence. . . . Such substantial evidence necessary to justify dismissal is determined by whether a reasonable man acting reasonably might have reached the same decision reached by the Board. . . . (Citations omitted.)

In *Penn-Delco, supra,* this Court reversed the Secretary's determination that the teacher's conduct did not fall within the definitional standard of immorality in Section 1122 of the Code. Further, applying the substantial evidence standard, this Court concluded that there is sufficient evidence to justify a school board's decision to dismiss a professional employee where the record shows the Board chose to accept the students' version of two incidents rather than the teacher's version. The rationale for the Court's conclusion there is equally applicable here: "The Board, as the only fact-finder with respect to these two incidents, and the only tribunal having the only opportunity to hear first-hand the testimony of both students and Respondent, resolved the issue of credibility against Respondent." *Id.* at 511, 382 A.2d at 167. We are unpersuaded by the Secretary's argument that in teacher tenure cases there should be some type of exception to this rule where the Secretary is reviewing testimony of only one student and the teacher. If there ever is a reason for relying on the determination of a tribunal having an opportunity to observe the witness it is under these circumstances.

Moreover, after reviewing the entire record, we are at a loss to understand the Secretary's conclusion that

the acts related by Karyl "could not have occurred." Both the Respondent and the student testified that on two separate occasions there was physical contact between the two and that both of these incidents occurred either in the teacher's classroom or preparation room. The student's prior statements to school administrators could have impeached her testimony before the Board, but it did not. Moreover, other testimony fails to establish the incredibility of the occurrence of the acts. Time frames with respect to the student's bus schedules were entirely consistent, albeit tight. The testimony of other teachers who used the preparation room only established that the room was used daily, but not that it was used at the time the alleged acts occurred.

It is clear that only two individuals know what occurred on the dates in question and their testimony is in conflict. It was for the Board in weighing all the testimony to determine which version to accept.

Respondent has raised three questions regarding the Secretary's decision: (1) whether the Board's failure to specify the dates of the alleged occurrences in its statement of the charges denied him due process of law; (2) whether the Secretary erred in failing to address his argument that the Board's solicitor's ruling on character testimony deprived him of the opportunity to present a defense; and (3) whether Sections 1127, 1130, 1131 and 1132 of the Code, 24 P.S. §§11-1127, 11-1130-1132, are unconstitutional in that they deny Respondent due process and equal protection of the law in failing to provide for the right of de novo review by an "impartial tribunal." We find no merit to these arguments. The charges did in fact specify two specific dates of occurrences which in themselves would have constituted immoral conduct. With regard to the introduction of character witnesses, it is clear

from the record that Respondent suffered no harm from the solicitor's ruling since his counsel stated that the witness who did testify was his "sole, pure character witness." Finally, we find the United States Supreme Court fully disposed of Respondent's fourteenth amendment argument in *Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482 (1976) in upholding the constitutionality of a Wisconsin statute not materially dissimilar from the Code. *See also, Watson Appeal,* 377 Pa. 495, 105 A.2d 576 (1954).

Accordingly, we will enter the following

ORDER

AND Now, April 23, 1979, the appeal of the Wissahickon School District in 1184 C.D. 1978 is hereby sustained and the order of the Secretary of Education, at Teacher Tenure Appeal No. 37-77, dated May 8, 1978, is hereby vacated, and the decision of the Board of School Directors of the Wissahickon School District, dated September 14, 1977, terminating the contract of Marvin P. McKown, reinstated. The appeal of Marvin P. McKown at 1201 C.D. 1978, is hereby dismissed.