531 A.2d 570

Joseph F. Foderaro, Petitioner *v.* The School District of Philadelphia, Respondent.

Argued June 8, 1987, before Judges MACPHAIL and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Leonard Zack,* with him, *Anthony C. Busillo, Manche, Lightman & Wagner,* for petitioner.

*Patricia A. Donovan,* Assistant General Counsel, with her, *Sally Akan,* General Counsel, for respondent.

Opinion by Judge MacPhail, September 23, 1987:

Joseph F. Foderaro (Petitioner) petitions for our review of an order of the Secretary of the Department of Education (Secretary) which affirmed the action of the Board of Education of the School District of Philadelphia dismissing Petitioner from his position with Murrell Dobbins Vocational-Technical High School (Dobbins) for persistent and willful violation of the school laws. We affirm.

Petitioner had been employed by the School District of Philadelphia for approximately 19 years when he was discharged by resolution of the School Board on June 24, 1984. Prior to his discharge, Petitioner served as Trade Coordinator with Dobbins School and one of his responsibilities was to purchase supplies for the school. As found by the Board, the school district has extensive policies and procedures prescribing how purchases are to be made and none of them permit one to make purchases in the school's name for personal use or for research. However, during a period of approximately 9 months, from June 18, 1982 through March 24, 1983, Petitioner purchased $8,000 to $10,000 worth of glassware and chemical equipment from the Arthur H. Thomas Company for his personal use. These purchases were all made in the Dobbins School's name which enabled Petitioner to use the school's tax exempt number and to receive the school's 15% discount.

Petitioner placed most of the orders by telephone although at least one order was made on Dobbins School stationery and Petitioner always paid with his own funds on a cash on delivery basis. Petitioner testified that the equipment was purchased to facilitate him in the manufacture of "octane plus," an experimental gasoline additive.

On April 10, 1983, a drug raid occurred at the home of Mr. George F. Lynch in Slickersville, New Jersey at

which certain items, specifically two heating mantles, which had been purchased by Petitioner through Dobbins School, were confiscated.[1] Petitioner later testified that he had given the equipment he purchased in the school's name to Mr. Lynch and that he had enfranchised Mr. Lynch to manufacture octane plus for him. The Dobbins School principal was notified of the drug raid and that items purchased through the school by Petitioner had been seized. Several conferences were held with Petitioner and various school officials which culminated in the Board's adoption of a resolution dismissing Petitioner for persistent and willful violation of school laws. Petitioner timely appealed the Board's action to the Secretary who affirmed the dismissal. The present appeal followed.

Our scope of review in a case such as this, where the Secretary has taken no additional testimony, is limited to a determination of whether constitutional rights were violated, an error of law committed, or if the Board's findings of fact are supported by substantial evidence. *Harrison v. Capital Area Intermediate Unit*, 84 Pa. Commonwealth Ct. 344, 479 A.2d 62 (1984).[2]

We note first that a tenured professional school employee, such as Petitioner, can be discharged only for reasons set forth in Section 1122 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30,

---

[1] This drug raid uncovered a clandestine methamphetamine laboratory. There were at least two items seized at the raid which were later discovered to have been purchased by Petitioner through Dobbins School.

[2] We note that the Secretary's scope of review of Board decisions has recently been expanded to a review *de novo*. *See Belasco v. Board of Public Education of the School District of Pittsburgh*, 510 Pa. 504, 510 A.2d 337 (1986). However, at the time the Secretary wrote her opinion in the present case, her scope of review was limited to that of an appellate body. *See Harrison.*

repealed in part by the Act of December 22, 1951, P.L. 1726, 24 P.S. §11—1122. Further, the Code affords a tenured professional employee explicit procedural safeguards which must be adhered to in order to effectuate a valid dismissal.[3] *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 462 A.2d 629 (1983). The burden then is upon the school board to establish that Petitioner committed an act enumerated in Section 1122 of the Code.

Petitioner first argues that there is no substantial evidence to support the Board's conclusion that he violated school law in that there is no school policy which specifically prohibits, or even addresses, the making of personal purchases through the school for one's personal use with personal funds. It is clear from the record that the school has extensive purchasing procedures, none of which permit personal purchasing. In addition, the vice-principal of the school, John McCann, testified that school employees were not permitted to use the school's tax exemption "number" to make personal purchases.[4] Although there is no written policy prohibiting personal purchases, we believe the fact that personal purchases are not provided for in the extensive detailed procedures which govern school purchasing constitutes substantial evidence in support of the Board's conclusion that such purchases are not permitted and, in fact, are in violation of the school's policy. We, therefore, reject Petitioner's first argument.

Petitioner next argues that the Board's conclusions that Petitioner knew or should have known that his personal purchases made in the school's name were improper, and thus that he willfully violated school policy

---

[3] We note that Petitioner has not raised here any challenge to the procedure afforded him by the Board.

[4] Notes of Testimony (N.T.) from March 1, 1984 at 113-115.

by making those purchases, are erroneous as a matter of law. Petitioner bases this argument on the fact that the cases relied on by the Secretary in her opinion involve situations where there was actual written notice of the rule or there was a warning to stop the behavior. Petitioner posits that since in his case there was no written policy prohibiting personal purchases and he was never warned to cease such purchasing, he cannot be charged with knowledge that his purchases were in violation of school policy. Petitioner points out that the Dobbins school vice-principal even accepted one package and delivered it to Petitioner without warning Petitioner to stop making personal purchases, thereby reinforcing Petitioner's belief that his personal purchases were proper.[5]

We reject this argument. We believe Petitioner has really presented us with a question of credibility. Petitioner testified that he did not know that his personal purchases made in the school's name were a violation of school policy. However, our review of the record in this case reveals that Petitioner was responsible for making large purchases for the school and that he was very familiar with the school's purchasing procedures. Those procedures, as previously mentioned, do not permit personal purchases to be made. Further, in other situations when Petitioner was unsure how to best accomplish a certain purchase he asked other school employees who were familiar with the purchasing procedures for guidance. Petitioner did not, however, solicit

---

[5] We reject Petitioner's argument that the vice-principal somehow acquiesced in Petitioner's personal purchases because he picked up one package and delivered it to Petitioner without warning Petitioner to stop making such purchases. The vice-principal testified that he did not know the package contained personal merchandise and that he assumed it was a shipment for school purposes. N.T. at 117-118.

advice as to whether his own personal purchases made through the school were proper; rather, he kept his practice of making personal purchases through the school entirely to himself. Petitioner also testified that he was "not especially" entitled to the 15% school discount and that it was a "distinct possibility" that he received the discount because the Arthur H. Thomas Company believed the orders were for the Dobbins School.[6]

Although Petitioner testified that he did not know that his personal purchasing was improper, it is clear that the Board, as is its province to do, simply rejected that testimony as incredible. *Wissahickon School District v. McKown,* 42 Pa. Commonwealth Ct. 169, 400 A.2d 899 (1979). Having found substantial evidence in the record to support the Board's determination that Petitioner knew or should have known that his purchases were in violation of school policy and that he therefore willfully violated school policy by making those purchases, we are bound by them. *Id.*

Petitioner next argues that the Board's decision must be reversed because it was based on highly prejudicial testimony regarding a drug raid. We disagree.

The rules governing the admission of evidence in administrative proceedings are more relaxed than those governing the admission of evidence in jury trials. *Murphy v. Department of Public Welfare,* 85 Pa. Commonwealth Ct. 23, 480 A.2d 382 (1984) (stating that evidence which is relevant and of reasonable probative value may be received).

In the present case, testimony concerning the drug raid was relevant in that it was only through information obtained in that raid that Petitioner's purchasing of large quantities of laboratory equipment through the school

---

[6] N.T. at 246-247.

for personal use was finally discovered. We, therefore, conclude that the evidence regarding the drug raid was relevant and, therefore, properly admitted.

Accordingly, we affirm the Secretary's decision.

ORDER

The order of the Secretary of the Department of Education in the above-captioned matter is affirmed.