Robert J. TETI and Francine
Teti, Plaintiffs,

v.

HURON INSURANCE COMPANY,
Defendant.

Civil Action No. 95–1315.

United States District Court,
E.D. Pennsylvania.

Jan. 29, 1996.

Jonathan Krinick, Sagot, Jennings, & Sigmond, Philadelphia, PA, for Plaintiffs.

Paul F.X. Gallagher, Richard K. Hohn, Maryellen Conroy, Gallagher Reilly & Lachat, P.C., Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiffs Robert J. Teti ("Teti") and Francine Teti seek a declaratory judgment concerning the obligations of Huron Insurance Company ("Huron"), an insurance carrier, to defend and indemnify them in an underlying civil action under the terms of a Huron-issued homeowner's insurance policy. The underlying suit involves a claim by a sixteen year-old female student at a Philadelphia high school that Teti, a teacher at the high school, had sexual intercourse with her. Huron denied Teti's claims for coverage on the basis of a policy exclusion for injuries or damages which are "expected or intended by the insured." *See* Memorandum of Law in Support of Defendant Huron Insurance Company's Motion for Summary Judgment, doc. no. 6, Exhibit 1, at 9, Section II—Exclusions, subsection 1a.

The parties have filed cross-motions for summary judgment. Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Since both parties agree to all material facts, the only question before the Court is the legal one of entitlement to a declaratory judgment.

Defendant's motion will be granted in accordance with the following: First, Pennsylvania law applies to this case. Second, all the charges by the student against Teti constitute allegations of intentional conduct. Third, the inferred intent doctrine is inapplicable to this case because the sixteen year-old student was legally capable of consenting to sexual intercourse. Finally, the Court holds that an insurance contract which provides for the defense and indemnification of a public school teacher, who has been charged with having sexual intercourse with a student, is void and unenforceable because it violates a defined and dominant public policy of Pennsylvania.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Teti and his wife, co-owners of the Huron-issued homeowner's insurance policy, are New Jersey residents. The underlying civil action against Teti is pending in Pennsylvania. All events described in the underlying action also occurred in Pennsylvania. Teti was criminally prosecuted for his alleged conduct in Pennsylvania, but was acquitted by a

jury. The minor involved is a Pennsylvania resident.

Huron contends that Pennsylvania law applies to this matter. According to Huron, Pennsylvania law mandates the inference of intended harm when an adult has sexual intercourse with a minor. Therefore, Huron argues, Teti's alleged conduct is excluded from coverage under the policy. *See Wiley v. State Farm Fire & Casualty Co.*, 995 F.2d 457, 464–65 (3d Cir.1993) (predicting that the Pennsylvania Supreme Court "would adopt the inferred intent rule in liability insurance cases involving an insured adult's intentional sexual abuse of a [thirteen year-old] child to raise a conclusive presumption of the insured's intent to harm the victim"). Alternatively, should New Jersey law apply, Huron proposes the same result, since, according to Huron, New Jersey law provides that sexual conduct between a minor and an adult constitutes an intentional act by the adult. *See Atlantic Employers Ins. Co. v. Tots & Toddlers Pre–School Day Care Center, Inc.*, 239 N.J.Super. 276, 571 A.2d 300, 304 (App.Div.) (finding requisite level of intent if insured were guilty of child molestation and concluding, "[i]t is simply against public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing"), *cert. denied*, 122 N.J. 147, 584 A.2d 218 (1990). .

Teti disagrees, contending that New Jersey law applies and that New Jersey has "not adopted the strict [Pennsylvania] test of the 'inferred intent doctrine.'" Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, doc. no. 8, at 4. Instead, Teti argues, under New Jersey law, the intent to injure may be presumed only "when the [insured's] actions are particularly reprehensible" in the underlying case. *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 607 A.2d 1255, 1265 (1992) (holding that statements of insured parent at public meeting questioning competency of teacher, albeit "unquestionably intentional," could not trig-

ger presumption of "intent to injure" because parent's conduct was not "particularly reprehensible"). Teti submits that this case does not rise to the level of "particularly reprehensible" conduct, not only because the sixteen year-old girl consented to the intercourse, but also because Teti is not alleged to have used force or the threat of force to compel her to have intercourse with him.

## II. DISCUSSION

### A. *Choice of Law*

This case is before the Court pursuant to its diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a). In a diversity action, "the choice of law rules of the forum state [determine] which state's law will be applied." *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Accordingly, the Court will apply Pennsylvania's choice of law rules.

In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court abandoned the traditional *lex loci delicti* doctrine which dictated application of the law of the place of injury in tort cases. Instead, the court opted for "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Id.* 203 A.2d at 805. This method of analysis involves a hybrid approach that "combines the approaches of both Restatement II (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991) (quoting *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978)).[1] "Although the *Griffith* case involved a tort action, subsequent cases have extended the

---

1. This case may be characterized as one involving a "false conflict" of laws. *See Lacey,* 932 F.2d at 187. A false conflict exists when two jurisdictions have applicable law, but applying the law of one jurisdiction would not result in impairing the governmental interests of the other. In this case, because applying Pennsylvania law would not impair New Jersey's interest in

protecting New Jersey minors from sexual conduct with adults, the conflict is false and Pennsylvania law should be applied. *See* Eugene F. Scoles and Peter Hay, *Conflict of Laws* § 2.6, at 17 & n. 8 (2d ed. 1992) (explaining that, if no conflict exists between laws of each respective jurisdiction, then court should apply law of forum).

same rationale and approach to contract cases involving a choice of law question." *Gould, Inc. v. Continental Casualty Co.,* 822 F.Supp. 1172, 1175 (E.D.Pa.1993) (Yohn, J.) (citations omitted); *see also United Servs. Auto. Ass'n v. Evangelista,* 698 F.Supp. 85, 87 (E.D.Pa.1988) (Giles, J.) (citing *Melville,* 584 F.2d at 1313, and applying the *Griffith* analysis "generally to contract actions and specifically to insurance contracts"), *aff'd,* 872 F.2d 414 (3d Cir.1989).[2] In this case, the two-pronged contacts and interests analysis compels application of Pennsylvania law.

With respect to the contacts prong of the *Griffith* analysis, the actions of Teti and the minor, the underlying civil litigation, and the criminal prosecution of Teti occurred in Pennsylvania. Moreover, the minor resides in Pennsylvania. By contrast, the only contact with New Jersey is the plaintiffs' residence.

As to the governmental interests at stake, the interests of Pennsylvania and those of New Jersey in protecting minors from sexual activity with adults are substantially similar. Pennsylvania's policy is to shield minors from sexual contacts with adults in general, *Wiley,* 995 F.2d at 464–65, and with teachers in particular, *see* discussion *infra* part II.B.3. New Jersey's public policy has the same effect. *See Tots & Toddlers,* 571 A.2d at 303–04; *accord Morton Int'l, Inc. v. Gen. Accident Ins. Co.,* 134 N.J. 1, 629 A.2d 831, 879 (1993) ("We cited [*Tots & Toddlers* ] … as illustrative of conduct that was so inherently injurious as to warrant the conclusion that intent to injure could be presumed."),

*cert. denied,* —— U.S. ——, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994); *see also Atlantic Employers Ins. Co. v. Chartwell Manor Sch.,* 280 N.J.Super. 457, 655 A.2d 954 (App.Div. 1995) (condemning sexual abuse of student by teacher); *A.C.R. v. Vara,* 264 N.J.Super. 565, 625 A.2d 41 (Law Div.1992) (holding that sexual molestation of students by teacher is presumed to result in physical injury).

Because the contacts in this case overwhelmingly favor Pennsylvania and the governmental interests to be protected under Pennsylvania law are substantially similar to those under New Jersey law, Pennsylvania is the jurisdiction with the greater interest in having its law applied. Thus, the Court shall apply Pennsylvania law to this case.

### B. *The Claims Involved*

Having determined that Pennsylvania law applies, the Court now addresses the question of whether Huron properly denied Teti's claims. The following claims have been alleged against Teti: negligent infliction of injuries, negligent infliction of emotional harm, negligent infliction of physical and emotional harm, punitive and exemplary damages, and assault and battery.[3] *See* Complaint, doc. no. 1, Exhibit 2, at 4–8. The factual basis for all claims is the alleged sexual intercourse between Teti and the sixteen year-old student. *Id.*

#### 1. *Exclusionary clauses under Pennsylvania law*

■ Under Pennsylvania law, an exclusionary clause, such as that contained in Hu-

---

**2.** Relying on *Travelers Indem. Co. v. Fantozzi,* 825 F.Supp. 80 (E.D.Pa.1993), plaintiffs contend that interpretation of an insurance contract is governed by the law of the state in which the contract was made. *Id.* at 84. The Court disagrees. *Fantozzi* relied on *Crawford v. Manhattan Life Ins. Co. of New York,* 208 Pa.Super. 150, 221 A.2d 877 (1966). *Id. Crawford* based its reasoning on the First Restatement of Conflict of Laws, which directed application of the law of the place where "the last act legally necessary to bring the contract into force takes place." 221 A.2d at 880–81.

The Restatement I contract formation approach was rejected by *Griffith.* Because the *Griffith* analysis has been extended to encompass contract actions and, more specifically, to include insurance coverage questions, the place where the insurance contract was made no longer controls determination of which jurisdiction's

law should apply. *See Gould,* 822 F.Supp. at 1175 (applying *Griffith* analysis to insurance contract action); *Evangelista,* 698 F.Supp. at 87 (applying *Griffith* analysis to insurance contract action).

**3.** The Third Circuit has distinguished an insurer's duty to defend an insured from an insurer's duty to indemnify. "Under Pennsylvania law, when an insured tenders multiple claims to an insurer for defense, the insurer is obligated to undertake defense of the entire suit as long as at least one claim is potentially covered by the policy. As to indemnification, however, the insurer is obligated to its insured only for those damages which are actually within the policy coverage." *Caplan v. Fellheimer Eichen Braverman & Kaskey,* 68 F.3d 828, 831 n. 1 (3d Cir. 1995) (citations omitted).

ron's insurance policy, "applies only when the insured intends to cause a harm." *Aetna Life and Casualty Co. v. Barthelemy*, 33 F.3d 189, 191 (3d Cir.1994) (citing *United Servs. Auto. Ass'n v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 987 (1986), *appeal denied*, 515 Pa. 600, 528 A.2d 957 (1987)). The intentional nature of the insured's actions alone is not enough: the insured must also have intended the resultant damage. *Id.* The mere fact that the insured "should reasonably have foreseen the injury which his actions caused" would fail to satisfy Pennsylvania's standard for insurance exclusions. *Id.* Additionally, "[a]n insured will only be covered [by the insurance policy] if he causes a harm of a generally different type than that which he set out to cause." *Elitzky*, 517 A.2d at 988. In short, an exclusionary clause will bar coverage if, first, the insured intended to commit the act, *and*, second, the insured intended to cause the harm.

### a. *The assault and battery and punitive damages claims*

Clearly, the assault and battery claim is excludable from Huron's insurance coverage. *See Barthelemy*, 33 F.3d at 191 (citation omitted) ("[B]y definition, the tort of battery requires proof of an intent to cause a harmful or offensive contact."). Furthermore, "[p]unitive damages are not recoverable under [an insurance] policy as a matter of law." *Aetna Casualty and Sur. Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94, 100 (1994) (citation omitted) ("There is no functional distinction or difference between punitive damages which arise from intentional conduct or reckless conduct. It is the conduct that is being punished, not the victim that is being compensated."). A closer question, however, is presented by the three negligence claims, to which the Court now turns.

### b. *The negligence claims*

"[A]fter a thorough search of Pennsylvania case law," the Pennsylvania Superior Court has recently concluded

> that no precedent exists for recovery in negligence for injuries suffered as a result of the commission by a tortfeasor of the intentional torts of assault and battery. To characterize as negligence the chil-

dren's physical and mental injuries alleged as a result of sexual, physical, and mental abuse would be to create a legal oxymoron as an extension of tort law we are not inclined to create.

*Roe*, 650 A.2d at 103. *See also Nationwide Ins. v. Zavalis*, 52 F.3d 689, 694 (7th Cir. 1995) (interpreting the law of Pennsylvania and finding that "either the insurer or the insured may attempt to pierce the allegations of the underlying complaint and prove that the insured's conduct was not, for example, negligent as alleged, but deliberate—or vice versa."); *Nationwide Mut. Ins. Co. v. Yaeger*, No. 93–3924, 1994 WL 447405 (E.D.Pa. Aug. 19, 1994) (Huyett, J.) ("A plaintiff may not dress up a complaint so as to avoid the insurance exclusion."), *aff'd*, 60 F.3d 816 (3d Cir.1995). Intentional conduct cannot be converted into negligence by careful word-choice or artful pleading.

■ Piercing the allegations of the underlying complaint, the Court finds that all the claims against Teti are predicated on his alleged sexual intercourse with a minor student. Under Pennsylvania law, this satisfies the requirement that the insured intended to commit the act. The remaining issue, however, is whether Teti intended to inflict *harm*, either through his "desire[ ] to cause the consequences of his act or [through his] know[ledge] that such consequences were substantially certain to result." *Elitzky*, 517 A.2d at 989.

Viewed in this light, the question becomes whether as a matter of Pennsylvania law the inference of intent to harm is mandated when an adult teacher has sexual intercourse with a sixteen year-old student, or whether this presents an issue of fact for trial.

### 2. *The Wiley and Barthelemy decisions*

Defendant argues that the outcome of this case turns on the application of the recent decision by the Third Circuit in *Wiley v. State Farm Fire & Casualty Co.*, 995 F.2d at 464–65, to the facts of this case. *Wiley*, however, must be read in light of the Third Circuit's subsequent decision in *Aetna Life and Casualty Co. v. Barthelemy*, 33 F.3d at 192.

### a. Inferred intent to harm

*Wiley* involved an action for declaratory judgment to determine the duties under Pennsylvania law of an insurer to indemnify an insured under a homeowner's insurance policy.[4] The adult insured had pled guilty to one count of indecent assault and one count of corrupting the morals of a minor, as a result of his sexual molestation of his thirteen year-old niece. The Third Circuit "predict[ed] that the Pennsylvania Supreme Court, if called upon to decide the issue, would adopt the inferred intent rule in liability insurance cases involving an insured adult's intentional sexual abuse of a child to raise a conclusive presumption of the insured's intent to harm the victim, regardless of the insured's assertion of a subjective lack of intent to harm." *Id.*

The effect of *Wiley,* in cases involving sexual molestation of a child, was to remove from the insured the burden of showing not only that the insured "intended his *actions,*" but also that "the insured must have specifically intended to *cause harm.*" *Id.* at 460 (citations omitted). As the Third Circuit explained, "harm to children in sexual molestation cases is inherent in the very act of sexual assault committed on a child, regardless of the motivation for or the nature of such assault, and that the resulting injuries are, as a matter of law, intentional represents an enlightened and perceptive view of the evolving law." *Id.* at 464.

In making this determination, the Third Circuit reviewed case law from several jurisdictions where the courts "have supported their adoption of the inferred intent rule by noting that the state's proscription of sexual contact between an adult and a minor is a clear indication that such contact is inherently injurious to the victim." *Id.* (citing *State Farm Fire & Casualty Co. v. Smith,* 907 F.2d 900, 902 (9th Cir.1990) (predicting inferred intent rule in case involving eleven year-old victim where Nevada law prohibited lewd acts with children under fourteen years of age); *J.C. Penney Casualty Ins. Co. v. M.K.,* 278 Cal.Rptr. 64, 65, 278 Cal.Rptr. 64,

65, 804 P.2d 689, 690 (inferring intent to harm in case involving five year-old victim where California law prohibited lewd acts with children under fourteen years of age), *cert. denied,* 502 U.S. 902, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991); *Allstate Ins. Co. v. Troelstrup,* 789 P.2d 415, 416, 419 (Co.1990) (inferring intent to harm in case involving twelve year-old victim where Colorado law prohibited sexual exploitation of children); *Landis v. Allstate Ins. Co.,* 546 So.2d 1051, 1053 (Fla.1989) (inferring intent to harm in case involving child-victims of day care center where Florida law prohibited sexual battery of children)). The Third Circuit concluded "that criminalization of such conduct additionally serves to place the insured on notice of 'the societal understanding that the harm from such conduct is inseparable from its performance.'" *Id.* at 464 (citing *Allstate Ins. Co. v. Mugavero,* 79 N.Y.2d 153, 581 N.Y.S.2d 142, 143, 146, 589 N.E.2d 365, 366, 369 (1992) (inferring intent to harm in case of six year-old and nine year-old victims where New York law prohibited deviate sexual intercourse with children under eleven years of age)).

A year later, the Third Circuit revisited the issue in *Barthelemy,* 33 F.3d at 192. The case involved whether, under Pennsylvania law, an insurer was obligated under a homeowner's policy to defend and indemnify the insured's son, who had been accused of nonconsensual sexual conduct, in a state court action. In *Barthelemy,* however, the victim was a nineteen year-old female college student who alleged that she was harmed by the eighteen year-old son of the insured, also a college student at the same institution, as a result of their having had sexual relations while they were both intoxicated. *Id.* at 190. The lower court had found that "[t]he Third Circuit's reasons for predicting adoption of the inferred intent rule in cases of child molestation are no less persuasive when the alleged victim is an adult." *Id.* at 191 (citation omitted).

The Third Circuit reversed, holding that the inferred intent rule adopted in *Wiley* in cases of child molestation did not apply when

---

**4.** The *Wiley* court did not reach the issue of the insurer's duty to defend, noting that "[t]he issue of initial coverage [was] not raised by the parties to this appeal ... and we therefore do not address it." *Wiley,* 995 F.2d at 458 n. 1.

the victim was an adult and that the harsh result of the inferred intent doctrine is reserved only for "exceptional cases," such as those alleging sexual child abuse. *Id.* at 192. As the Third Circuit stated,

> Were it true that any potential criminal liability would give rise to an inferred intent to harm and, thereby, exclude coverage under a homeowner's policy, we would not have emphasized in *Wiley* that sexual abuse of a child is a uniquely harmful act calling for the narrowly applied inferred intent rule. We simply would have recognized in *Wiley* that subjective intent generally is relevant, even when the insured has pleaded guilty to a crime.

*Id.* (citations omitted). The Third Circuit further explained its rationale for not applying the inferred intent rule to situations where the victim is an adult:

> The reason for the rule of inferred intent is a societal recognition that, because a child lacks the capacity to give consent, sexual activity foisted upon that child by an insured adult raises the irrebuttable inference that the adult intended to harm that child, regardless of the insured's subjective intent. The reason for the rule is inexorably intertwined with the tender age of the child.

*Id.* at 193 (citation omitted).

*Wiley* and *Barthelemy* may be read together as follows: Sexual conduct by an adult upon a child triggers application of the rule of inferred intent. Conversely, sexual conduct upon an adult does not. The reason for the distinction is that, while the former lacks the legal capacity to consent, the latter does not. Therefore, while the thirteen year-old in *Wiley* was not legally capable of consenting, the nineteen year-old in *Barthelemy* was.

■ The rule that emerges is that, if the victim of a sexual contact with an adult does not have the legal capacity to consent, inferring intent is appropriate. Conversely, if the victim is legally capable of consenting, the rules of general liability apply; and the insurer must show that the insured had the specific intent to harm. The Court now turns to whether the sixteen year-old victim in this case had the legal capacity to consent to sexual intercourse with Teti.

### b. *A minor's capacity to consent*

Whether a person may give effective consent under the circumstances is a question of state law. In Pennsylvania, despite their common usage, the terms, "minor," "child," and "adult" are not helpful in this context, since none of the terms are defined in a statute or impressed with universal meaning.[5] The answer, therefore, depends on a

---

5. The terms are also used interchangeably and largely without a definitional context in many of the cases decided in other jurisdictions. See cases collected in *Whitt v. DeLeu*, 707 F.Supp. 1011, 1014 n. 4 (cited in *Wiley*, 995 F.2d at 461 n. 5): *American States Ins. Co. v. Borbor*, 826 F.2d 888 (9th Cir.1987) (undressing, touching and photographing nursery school children in various sexual poses); *Allstate Ins. Co. v. Thomas*, 684 F.Supp. 1056 (W.D.Okla.1988) (criminally touching and molesting children at day care center in lewd and lascivious manner); *State Farm Fire & Casualty Co. v. Huie*, 666 F.Supp. 1402 (N.D.Cal.1987) (rape of minor), *aff'd sub nom. State Farm Fire & Casualty Co. v. Bomke*, 849 F.2d 1218 (9th Cir.1988); *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984) (sexual abuse of minor stepdaughter by stepfather on daily basis over ten-year period from age six to age sixteen); *Fire Ins. Exch. v. Abbott*, 204 Cal.App.3d 1012, 251 Cal.Rptr. 620 (1988) (two cases: fondling thigh of six year-old female and causing her to touch insured's penis; and, teacher's homosexual relationship with fourteen-year-

old boy); *Allstate Ins. Co. v. Kim W.*, 160 Cal. App.3d 326, 206 Cal.Rptr. 609 (1984) ("lewd or lascivious acts" inflicted upon minor), *hearing denied*, (Cal. Dec. 19, 1984); *Troelstrup v. Dist. Court*, 712 P.2d 1010 (Colo.1986) (en banc) (homosexual acts with minor); *McCullough v. Cent. Florida YMCA*, 523 So.2d 1208 (Fla.Dist.Ct.App. 1988) (fondling of genitals of three young boys), *approved sub nom. Shearer v. Cent. Florida YMCA*, 546 So.2d 1050 (Fla.1989); *Landis v. Allstate Ins. Co.*, 516 So.2d 305 (Fla.Dist.Ct.App. 1987) (sexual attacks on children at day care center), *approved*, 546 So.2d 1051 (Fla.1989); *Roe v. State Farm Fire & Casualty*, 188 Ga.App. 368, 373 S.E.2d 23 (1988) (father's molestation of daughter over four-year period from age seven to ten), *aff'd*, 259 Ga. 42, 376 S.E.2d 876 (1989); *Altena v. United Fire & Casualty Co.*, 422 N.W.2d 485 (Iowa 1988) (nonconsensual sexual acts with twenty year-old adult); *Harpy v. Nationwide Mut. Fire Ins. Co.*, 76 Md.App. 474, 545 A.2d 718 (1988) (sexual abuse of female over five-year period from age nine to thirteen); *Terrio v. McDonough*, 16 Mass.App.Ct. 163, 450 N.E.2d 190

specific legislative judgment, reached in light of human experience, of the appropriate biological age at which a person can make informed choices under the relevant circumstances.

In the civil context, the age of eighteen is generally the time when the law attaches legal consequences to a person's actions. For example, only individuals who are eighteen years or older possess the legal capacity to relinquish and terminate their parental rights, the legal capacity to execute anatomical gifts, the legal capacity to consent to marriage, the entitlement to apply for a driver's license, and the right to vote.[6]

■ In the criminal context, the line is not so bright. When prosecuting crimes involving sexual contact with another person, the law recognizes that consent of the victim may negative certain elements of the offense, such as involuntariness. Wayne R. LaFave & Austin W. Scott, Jr., Handbook on Criminal Law § 57, at 408 (1972). The Pennsylvania legislature, however, has declared that, regardless of the victim's objectively manifested willingness, consent is not a defense under certain circumstances, such as the tender age of the victim. For example, in cases of rape or sexual assault, consent is no defense if the victim is thirteen years of age or younger. In addition, victims who are over thirteen, but under sixteen, do not have the legal capacity to consent to sexual contact with an adult who is four or more years older than the victim and who is not married to the victim.[7] Pennsylvania law, however, does not

(sexual assault and battery upon adult), *review denied,* 390 Mass. 1102, 453 N.E.2d 1231 (1983); *Auto–Owners Ins. Co. v. Gardipey,* 173 Mich.App. 711, 434 N.W.2d 220 (1988) (grabbing ten-year-old boy and placing penis in boy's mouth); *Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400 (1985) (twenty-one year-old adult's sexual contacts, including penetration, inflicted on fourteen year-old female); *Estate of Lehmann v. Metzger,* 355 N.W.2d 425 (Minn.1984) (sexual assaults on niece over four-year period, from age twelve to sixteen); *Horace Mann Ins. Co. v. Indep. Sch. Dist. No. 656,* 355 N.W.2d 413 (Minn. 1984) (sexual contacts between high school teacher-counselor and his sixteen year-old female student); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834 (Minn.1982) ("sexual play" with minor male by foster parent); *Illinois Farmers Ins. Co. v. Judith G.,* 379 N.W.2d 638 (Minn.Ct.App. 1986) (various acts of sexual contact by minor with eight year-old and nine year-old female victims), *review denied,* (Minn. Mar. 21, 1986); *Mut. Serv. Casualty Ins. Co. v. Puhl,* 354 N.W.2d 900 (Minn.Ct.App.1984) (homosexual assault upon minor), *review denied,* (Minn. Feb. 6, 1985); *Vermont Mut. Ins. Co. v. Malcolm,* 128 N.H. 521, 517 A.2d 800 (1986) (homosexual assaults upon eleven year-old boy); *Rodriguez v. Williams,* 107 Wash.2d 381, 729 P.2d 627 (1986) (en banc) (sexual abuse of fifteen year-old female by stepfather); *St. Michelle v. Robinson,* 52 Wash.App. 309, 759 P.2d 467 (1988) (father's sexual abuse of daughter from age eight to age nine); *Pub. Employees Mut. Ins. Co. v. Rash,* 48 Wash.App. 701, 740 P.2d 370 (1987) (sexual molestation of nine year-old boy); *Grange Ins. Ass'n v. Authier,* 45 Wash.App. 383, 725 P.2d 642 (1986) ("indecent liberties" taken with female minors and "touching" them "in a criminal manner"), *review denied,* 107 Wash.2d 1024 (1987); *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581 (1988) (sexual contacts, such as touching of geni-

tals, inflicted on junior high school student under sixteen years of age by teacher).

**6.** *See, e.g.,* 20 Pa.Cons.Stat.Rules 15.2, 15.4 (West 1995) (under Pennsylvania Orphans Court rules, voluntary relinquishment of parental rights and involuntary termination of parental rights, consent ineffective if less than eighteen years of age requires parental consent); 20 Pa.Cons.Stat. § 5301 (West 1995) (under Pennsylvania Uniform Transfers to Minors Act, minor is defined as "an individual who has not attained 21 years of age"); 20 Pa.Cons.Stat. § 8611 (West 1995) (under civil statute, consent to execution of anatomical gifts ineffective if less than eighteen years-old); 23 Pa.Cons.Stat. §§ 1304, 3305 (West 1995) (under civil statute, consent to marriage ineffective if less than eighteen years-old); 23 Pa.Cons.Stat. § 2711 (West 1995) (under adoption statute, consent to adoption ineffective if adoptee less than eighteen years-old); 25 Pa. Cons.Stat. § 2811 (West 1995) (entitlement to vote begins at eighteen years of age); 35 Pa. Cons.Stat. § 10001 (West 1995) (consent to donate blood ineffective if less than seventeen years-old); 42 Pa.Cons.Stat. § 5945 (West 1995) (consent to disclosure of confidential communications to school personnel ineffective if less than eighteen year-old); 75 Pa.Cons.Stat. § 1507 (West 1995) (application for driver's license or learner's permit ineffective without parental consent if less than eighteen years-old); *see also* 18 Pa.Cons.Stat. § 6306 (West 1995) (under criminal statute, legal drinking age begins at twenty one years of age).

**7.** *See* 18 Pa.Cons.Stat. § 3121 (West 1995) (under criminal rape statute, consent ineffective if victim less than thirteen years-old); 18 Pa.Cons. Stat. § 3122.1 (West 1995) (under criminal statutory sexual assault statute, consent ineffective if victim is less than sixteen years-old and offender is four or more years older than victim and they are not married to each other); 18 Pa.Cons.Stat.

bar the defense of consent to a charge of rape or sexual assault when the victim is sixteen years of age or older. *See* 18 Pa. Cons.Stat. § 3121 (West 1995) (criminal rape statute); 18 Pa. Cons.Stat. § 3122.1 (West 1995) (criminal sexual assault statute). The Court concludes that, because Pennsylvania lacks a universal age of consent and because Pennsylvania law recognizes that a sixteen year-old is legally capable of consenting to sexual intercourse with an adult, the victim in this case was legally capable of consenting to sexual intercourse with Teti.

The Court finds this expression of legislative judgment as to the age at which a person is legally capable of consenting to sexual intercourse most pertinent to the facts of this case. Applying the *Wiley–Barthelemy* rule to this case, the Court concludes that, since the victim was legally capable of consenting to intercourse with Teti, the rule of inferred intent to harm is inapplicable to this case. *See Barthelemy,* 33 F.3d at 193; *Wiley,* 995 F.2d at 464.

### 3. *Public policy*

■ The Court, however, shall deny Teti's claim to coverage on the independent basis that the agreement to provide Teti legal representation and to indemnify him offends Pennsylvania public policy.[8]

#### a. *Statutes and legal precedents*

"[P]rivate parties are generally free to decide what insurance coverage they want and will pay for, and insurance companies are free to decide what risks to undertake and what risks to reject." *Neil v. Allstate Ins. Co.,* 379 Pa.Super. 299, 549 A.2d 1304, 1307 (1988), *alloc. denied,* 522 Pa. 577, 578, 559

A.2d 38, 39 (1989). Yet, under certain circumstances, public policy permits the law to "restrict [their] freedom of contract or private dealings for the good of the community." *Daley–Sand v. West Am. Ins. Co.,* 387 Pa.Super. 630, 564 A.2d 965, 969 (1989) (citation omitted), *called into doubt on other grounds, Nationwide Ins. Co. of Columbus, Ohio v. Patterson,* 953 F.2d 44 (3d Cir.1991). "As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy." *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). "[P]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Guardian Life Ins. Co. v. Zerance,* 505 Pa. 345, 479 A.2d 949, 954 (1984) (quoting *Muschany,* 324 U.S. at 66, 65 S.Ct. at 451).

■ Therefore, in order to invalidate a contract on the basis of public policy, the Court must identify in the sovereign's positive law a defined, dominant, and unambiguous expression that the performance of the thing agreed to by the parties is inimical to the public good. *See In re McCurdy's Estate,* 303 Pa. 453, 154 A. 707, 708 (1931) ("The prime question is whether the thing forbidden is inimical to the public interest.").

■ The Court recognizes that "public policy" is not, of course, a mantra which licenses the judiciary to act as a board of censors for contemporary morality or to impose, under notions of the general good and welfare, its own brand of social or economic justice. *Cf. Lochner v. New York,* 198 U.S., 45, 76, 25 S.Ct. 539, 547, 49 L.Ed. 937 (1905) (Holmes J., dissenting) ("It is settled by vari-

§ 3123 (West 1995) (under criminal involuntary deviate sexual intercourse statute, consent ineffective if victim is either less than thirteen years-old, or less than sixteen years-old and offender is four or more years older than victim and they are not married to each other); 18 Pa.Cons.Stat. § 3125 (West 1995) (under criminal aggravated indecent assault statute, consent ineffective if victim is either less than thirteen years-old, or less than sixteen years-old and offender is four or more years older than victim and they are not married to each other); 18 Pa.Cons.Stat. § 3126 (West 1995) (under criminal indecent assault statute, consent ineffective if victim is either less

than thirteen years-old, or less than sixteen years-old and offender is four or more years older than victim and they are not married to each other).

8. This holding, that Pennsylvania public policy bars coverage in this case, begins where the Third Circuit left off in *Wiley:* "Because we affirm based on the intended harm exclusion in Floyd's insurance contract, we do not address the question whether Pennsylvania public policy would also preclude insurance coverage under the facts of this case." *Wiley,* 995 F.2d at 468 n. 14.

ous decisions of this court that state constitutions and state laws may regulate life in many ways which [judges] as legislators might think as injudicious, or if you like as tyrannical, as this . . . ."). As the Pennsylvania Supreme Court warned over half a century ago, "[i]n our judicial system the power of courts to formulate pronouncements of public policy is sharply restricted; otherwise they would become judicial legislatures rather than instrumentalities for the interpretation of law." *Mamlin v. Genoe*, 340 Pa. 320, 17 A.2d 407, 409 (1941).

Yet, "when a given policy is so obviously . . . against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it . . . a court may constitute itself the voice of the community in so declaring [what is or is not in accord with public policy]." *Id.* (most recently cited by the Third Circuit in *Electric Ins. Co. v. Rubin*, 32 F.3d 814, 816 (3d Cir.1995)).[9] The Court concludes that this is such a case and, by "constituting itself the voice of the community," declares that insuring against damages resulting from sexual contacts between a public school teacher and his student is repugnant to Pennsylvania public policy.

### b. *Pennsylvania's interest in public education*

Public education for their children is of paramount importance to the citizens of Pennsylvania. The Commonwealth's constitution, the enactments of its legislature, and numerous judicial precedents support this conclusion. *See* Pa.Stat.Ann. Art. 3, § 14 (1994) (providing "for the maintenance and

support of a thorough and efficient system of public education to serve the needs of the Commonwealth"). In fact, compulsory school attendance of every resident child from age eight to age seventeen is mandated by statute. 24 Pa.Stat.Ann. tit. 24, §§ 13–1326, 13–1327 (1992 & Supp.1995).

The Pennsylvania legislature has expressly afforded students protection from sexual advances by teachers while in school. *See* 23 Pa.Cons.Stat.Ann. § 6352(a)(1) (1995) (requiring school employees to "report suspicions of sexual abuse or sexual exploitation of a student by a school employee").

Pennsylvania courts have disapproved of sexual or romantic conduct between public school teachers and minor students.[10] In fact, the termination of a teacher's employment for such conduct has been uniformly upheld. *See Manheim Cent. Educ. Ass'n v. Manheim Cent. Sch. Dist.*, 132 Pa.Cmwlth. 94, 96, 572 A.2d 31, 32 (upholding a finding of immorality on the basis of high school teacher's love letters and oral declaration of love to two students), *appeal denied*, 525 Pa. 661, 582 A.2d 326 (1990); *Keating v. Bd. of Sch. Directors of the Riverside Sch. Dist.*, 99 Pa. Cmwlth. 337, 342, 513 A.2d 547, 549 (1986) ("[A high school teacher's] public pressing of affections upon a sixteen year old student without any provocation or encouragement on her part and in blatant disregard of several requests to stop constituted substantial evidence to support [the teacher's] dismissal on the basis of immorality."), *appeal denied*, 514 Pa. 626, 522 A.2d 51 (1987); *Wissahickon Sch. Dist. v. McKown*, 42 Pa.Cmwlth. 169,

---

9. More frequently, Pennsylvania courts have voided on the basis of public policy insurance clauses which *barred* coverage to insureds who are given broader protections under state statutes. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281, 285 (1978) (finding insurance exclusionary clause contrary to state statute mandating floor of minimum protection to be afforded to owner/operator of motor vehicle); *Daley–Sand*, 564 A.2d at 969–72 (finding insurer's refusal to pay benefits frustrated public policy requiring underinsured motorist coverage). The Pennsylvania Supreme Court has observed that use of the phrase "public policy" often serves as an indicator of when the courts intend to interpret statutes broadly in order to help manifest legislative intent. *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234, 1235

(1994) (citing *Jeffrey v. Erie Ins. Exchange*, 423 Pa.Super. 483, 621 A.2d 635, 640 (1993), *appeal denied*, 537 Pa. 651, 644 A.2d 736 (1994)).

10. Under § 1122 of the Pennsylvania Public School Code of 1949, one of the major grounds for terminating the contract of a public school employee is immorality. *See* 24 Pa.Cons.Stat. Ann. § 11–1122 (1992). "Immorality" has been judicially defined as "a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate." *Keating*, 99 Pa.Cmwlth. at 342, 513 A.2d at 549 (citing *Horosko v. Mount Pleasant Township Sch. Dist.*, 335 Pa. 369, 372, 6 A.2d 866, 868, *cert. denied*, 308 U.S. 553, 60 S.Ct. 101, 84 L.Ed. 465 (1939)).

174–75, 400 A.2d 899, 901–02 (1979) (upholding school board's finding of immorality on basis of two separate incidents of sexual contact between high school teacher and female student); *Penn–Delco Sch. Dist. v. Urso,* 33 Pa.Cmwlth. 501, 502–06, 382 A.2d 162, 164–66 (1978) (upholding school board's finding of immorality on basis of high school teacher's offer to spank fifteen year-old and seventeen year-old female students).

As the Third Circuit has noted, "a teacher's sexual molestation of a student could not possibly be deemed an acceptable practice." *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 727 (3d Cir.1989) (involving § 1983 claim against high school band director who engaged in sexual acts with student from student's sophomore through senior year), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990).

Based on its review of Pennsylvania's positive law, including its constitution, statutes, and judicial decisions on the subject, and drawing sustenance from the stated purposes behind Pennsylvania's rules and regulations, the Court concludes that there is "a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal," *Mamlin,* 17 A.2d at 409, which repudiates the notion of indemnifying a public school teacher for damages resulting from sexual intercourse between him and a student.[11] Therefore, the Court holds that an insurance contract is void and unenforceable as contrary to a defined and dominant Pennsylvania public policy, when it provides for the defense and indemnification of a public school teacher from claims that the teacher had sexual intercourse with a sixteen year-old student.

### III. CONCLUSION

The Court finds that Pennsylvania law applies to this case; that all the charges by the student against Teti constitute allegations of intentional conduct; that the inferred intent doctrine is inapplicable to this case because the student was legally capable of consenting to sexual intercourse; and that the insurance contract is void and unenforceable because it violates a defined and dominant public policy of Pennsylvania.

For the foregoing reasons, defendant's motion is granted and plaintiffs' motion is denied.

---

**11.** As the Third Circuit has suggested, "[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that he was paying for [coverage for liability arising out of his sexual abuse of a child]." *Wiley,* 995 F.2d at 464 (brackets in original).