Board of School Directors of the Eastern York School District, Petitioner v. Myron L. Fasnacht, Respondent.

Argued December 17, 1981, before President Judge CRUMLISH and Judges ROGERS and CRAIG, sitting as a panel of three.

*Michael I. Levin, Cleckner and Fearen,* for petitioner.

*Thomas W. Scott, Killian & Gephart,* for respondent.

OPINION BY JUDGE CRAIG, February 18, 1982:

Eastern York School District appeals an order of the Secretary of Education which reversed a decision of the Board of School Directors dismissing Myron Fasnacht, tenured professional employee.

The Superintendent of Schools had suspended Fasnacht, without pay, from his teaching position on January 4, 1979. By letter of January 12, 1979, the

school board informed Fasnacht that he was charged with persistent negligence and incompetence;[1] after notice, the board held hearings at which Fasnacht was present and represented by counsel.

Under the negligence charge, the chief specification against Fasnacht was that of sleeping while he was supposed to be presiding over his class. The remaining specifications included (1) failure to comply with lesson plan policy, (2) inadequate preparation of individual evaluation plans (IEPs) for the mentally retarded students whom he taught, and (3) teaching subjects inconsistent with the IEPs which he had prepared.

The board's decision stated specific findings and dismissed Fasnacht on the ground of persistent negligence, based primarily upon the charge of sleeping in class. The board also found that Fasnacht had failed to submit lesson plans and had taught subjects inconsistent with his IEPs, but the board did not find any failures in the preparation, adequacy or pursuance of lesson plans, nor any inadequacy in the preparation of IEPs. The board viewed the incompetence charge as not proved.

On appeal, the Secretary of Education, without receiving any additional evidence, reviewed the record and, on the basis of newly stated findings of his own, reversed the board's dismissal action.

Although the board classed all of the specifications as relating to the negligence charge, and the Secretary (while agreeing that failure to submit plans would be negligence) viewed inadequacies of preparation and presentation as relating to competence, we need not resolve that distinction because we conclude that we

---

[1] Either charge provides a valid basis for terminating a professional public school employee's contract under Section 1122 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1122.

must reverse the Secretary's decision on the ground that he exceeded his scope of review in overturning the board's dismissal action based upon sleeping at work.

The Pennsylvania Supreme Court clarified the scope of review accorded to the Secretary by the terms of Public School Code Section 1131[2] in *Strinich v. Clairton School District*, Pa. , 431 A.2d 267 (1981) by the statement that:

> To the extent that additional testimony is taken, the Secretary may make additional findings of fact. If no such additional testimony is taken, however, the Secretary's review is limited to traditional appellate review. Compare, Jones v. Workmen's Compensation Appeal Board, 25 Pa. Cmwlth. 546, 551, 360 A.2d 821, 824 (1976).

Pa. at , 431 A.2d at 269-70 n. 3. The meaning of "traditional appellate review" is illuminated by the Supreme Court's specific citation to the page in *Jones* where we stated that the reviewing administrative

---

[2] The applicable part of the section, 24 P.S. §11-1131, describes the Secretary's appellate duties and powers in broad terms:

> The Superintendent of Public Instruction shall review the official transcript of the record of the hearing before the board, and may hear and consider such additional testimony as he may deem advisable to enable him to make a proper order. At said hearing the litigants shall have the right to be heard in person or by counsel or both.
>
> After hearing and argument and reviewing all the testimony filed or taken before him, the Superintendent of Public Instruction shall enter such order, either affirming or reversing the action of the board of school directors, as to him appears just and proper.

Although the Secretary is obligated to review the record of the hearing before the school board, this section gives the Secretary authority to consider evidence in addition to that presented to the board. *Lucciola v. Commonwealth*, 25 Pa. Commonwealth Ct. 419, 360 A.2d 310 (1976).

agency, "without taking further evidence, may not reverse ... as to the credibility of the evidence...."

Thus, when the Secretary has received additional evidence, the Secretary functions as the "ultimate fact finder" and may "determine the weight of the testimony". *Warren County School District v. Carlson,* 53 Pa. Commonwealth Ct. 568, 418 A.2d 810 (1980) (additional evidence, without new testimony). However, where, as here, the board makes findings of fact and the Secretary takes no new evidence, the Secretary's scope of review is limited to determining whether there is substantial evidence to support the findings of the board. *Wissahickon School District v. McKown,* 42 Pa. Commonwealth Ct. 169, 400 A.2d 899 (1979); and *see Penn-Delco School District v. Urso,* 33 Pa. Commonwealth Ct. 501, 382 A.2d 162 (1978); *Landi v. West Chester School District,* 23 Pa. Commonwealth Ct. 586, 353 A.2d 895 (1976).

Review of the record requires a conclusion that there is substantial evidence to support the board's findings that Mr. Fasnacht was sleeping in his classroom twice during the week ending March 10, 1977, on May 16, 1978, on October 2 and 31, 1978 and on January 3, 1979.[3] Supporting those findings is the aggregated testimony of four school administrators, each of whom, with respect to specific dates, related that they had observed Fasnacht asleep at his desk while in charge of his class.

The Secretary's opinion, after a very thorough review of the record, concluded that the testimony concerning sleeping was not credible; because on most of the occasions, the observers did not enter the room

---

[3] Although Fasnacht's physician testified that Fasnacht, for arthritic gout, had been receiving medicine known to cause drowsiness, such evidence was irrelevant because no issue of a medical excuse was involved.

or attempt to wake Fasnacht,[4] the Secretary reasoned that:

[I]t is impossible to believe that a teacher's superior ... would have so little regard for mentally retarded school children's safety and welfare that he would perceive their teacher to be asleep and simply return to his office without intervening in anyway to protect those children.

From other testimony, to the effect that Fasnacht's physical appearance is such that his eyes are "hooded" so as to give his eyes an appearance of being closed when they are not, the Secretary specifically found the testimony of Dr. Jenkins, the School Superintendent, to be unreliable because, at a demonstrative reenactment at the board's hearing, Dr. Jenkins, even within a distance of two feet, thought that Fasnacht's eyes were closed when they were in fact open.

However, under the scope of review noted above, where the board has received all of the evidence, the Secretary cannot substitute his judgment regarding the credibility of witnesses for that of the board.[5] The same is true with respect to drawing inferences from

---

[4] Dr. Jenkins, the school superintendent, as one of those witnesses, testified that on two occasions he entered the classroom after observing Fasnacht sleeping. He stated that, when he entered the room and approached Fasnacht, "I got just about to his desk before he realized that I was there and appeared to awaken."

[5] *Grant v. Board of School Directors, Centennial School District*, 43 Pa. Commonwealth Ct. 556, 403 A.2d 157 (1979), cited by the Secretary here in his opinion, does not hold for any different principle. In that case, we remanded to the Secretary for review on the merits and for the making of findings where the board had taken all of the evidence but itself had made no findings. *Grant* therefore stands for the limited proposition that, when the board makes no findings, upon appeal the Secretary, whether affirming or reversing the board, must make findings adequate for review by the courts.

demonstrative evidence, where it was the board members who observed the reenactment.

In view of our conclusion that there was substantial evidence to support the key specification as to negligence, we need not consider the other specifications in detail.[6] Accordingly, we reverse the Secretary.[7]

### ORDER

Now, February 18, 1982, the order of the Secretary of Education, made September 4, 1980, sustaining the appeal of Myron L. Fasnacht, is reversed and the decision of the Board of School Directors of the Eastern York School District is reinstated.

Judge PALLADINO did not participate in the decision in this case.

---

[6] The Secretary essentially concluded that Fasnacht's non-filing of lesson plans and classroom discussion not directly related to IEPs, even if true as a matter of fact, did not constitute legal cause for dismissal because lesson plans were inapplicable to the student group involved and because some digression from IEP subjects is normal. We agree.

[7] Fasnacht claims that he is entitled to back pay and benefits from the date of his suspension until the date of discharge. However, the Public School Code does not deny the superintendent the right to remove an unfit teacher from the classroom pending dismissal by the board. A teacher may be suspended, without pay, pending a hearing, for misconduct. *Kaplan v. School District of Philadelphia*, 388 Pa. 213, 130 A.2d 672 (1957).