109 Pa. Commonwealth Ct. 120 (1987)
530 A.2d 541
Board of Education of the School District of Philadelphia, Petitioner
v.
Catherine Kushner, Respondent.
No. 2739 C.D. 1984.
Commonwealth Court of Pennsylvania.
September 2, 1987.
Argued June 10, 1986.
*121 Before Judges CRAIG and BARRY, and Senior Judge BLATT, sitting as a panel of three.
Patricia A. Donovan, with her, Sally Akan, General Counsel, for petitioner.
Alfred D. Whitman, for respondent.
OPINION BY JUDGE BLATT, September 2, 1987:
This is an appeal by the Board of Education of the School District of Philadelphia (District) from an order *122 of the Secretary of Education (Secretary) reversing the District's dismissal of Catherine Kushner (teacher). She was a tenured employee who was dismissed from her teaching position with the District on grounds of incompetence.
Initially, the teacher was suspended without pay until a hearing was held and she was subsequently dismissed. She had received two consecutive unsatisfactory ratings from the District Superintendent at the end of each of the school years in 1981 and 1982. Her dismissal was reversed by the Secretary, who determined that: (1) a pre-hearing suspension was not warranted in this case, (2) dismissal was improper because the teacher had not received two consecutive unsatisfactory ratings and, (3) the District's failure to use numerical scores in its ratings invalidated these ratings. The issues on appeal are, simply, whether or not each of these three legal conclusions is correct.
Preliminary, we recognize that the Secretary is vested with the authority to conduct a de novo review in cases involving disciplinary action for cause and that he is the neutral factfinder. Belasco v. Board of Public Education of School District of Pittsburgh, 510 Pa. 504, 510 A.2d 337 (1986). Our scope of review is limited to determining whether or not there has been a constitutional violation or an error of law and whether or not the findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. § 704; Belasco.
We begin by considering whether or not the District was permitted to suspend the teacher without pay before it held a hearing.
It is, of course, well settled that a suspension for cause pending a hearing is permissible where the teacher's conduct is potentially harmful to the safety of the children. Kaplan v. Philadelphia School District, *123 388 Pa. 213, 130 A.2d 672 (1957); Board of School Directors of the Eastern York School District v. Fasnacht, 64 Pa. Commonwealth Ct. 571, 441 A.2d 481 (1982). Kaplan involved a teacher who was suspended after refusing to answer questions pertaining to alleged activities in the Communist party. Fasnacht involved a teacher of mentally retarded students who was suspended for failure to comply with lesson plan policy, inadequate preparation of individualized education programs, and sleeping in class.
The instant case involves a teacher whose classroom was said to be littered with sunflower seeds, paper, "junk," and whose classroom walls and furniture were said to be covered with graffiti. Further, the teacher was said to have failed to plan her lessons, to give directions to students, and, significantly, to maintain order. It is her contention that said failings, even if they existed, do not pose such a possibility of harm to the students as to justify a pre-hearing suspension. We respectfully disagree.
First, we must note that "the maintenance of a public school system is primarily for the education and training of our youth and the incidental financial benefit of those participating therein is of secondary concern." School District of Philadelphia v. Twer, 498 Pa. 429, 435, 447 A.2d 222, 224 (1982). Second, we do not read Kaplan and Fasnacht to permit suspension without hearing only in the most draconian situations. Here, the District found that the teacher was unable to maintain order in the classroom. Such a fact leads to the conclusion that a very real potential for harm existed. Accordingly, we believe the suspension was permissible under established case law. Additionally, we note that any harm resulting from an improper suspension of a teacher can be significantly reduced by an award of back pay for the period of improper suspension. See Twer. We *124 must hold, therefore, that the Secretary erred in concluding that a suspension prior to a hearing was improper.
The second issue presented involves the question of whether or not the ratings received by the teacher were invalid because: (1) they did not include numerical scores, (2) they were completed in two parts, and (3) they were not properly signed. Section 1123 of the Public School Code of 1949, Act of March 10, 1949 P.L. 30, as amended, 24 P.S. § 11-1123 provides:
Rating system
In determining whether a professional employe shall be dismissed for incompetency, and in rating the services of a temporary professional employe, the professional employe or temporary professional employe shall be rated by an approved rating system which shall give due consideration to personality, preparation, technique, and pupil reaction, in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction, and to be revised, from time to time, by the Department of Public Instruction with the cooperation and advice of a committee appointed by the Superintendent of Public Instruction, including representation from district superintendents of schools, classroom teachers, school directors, school supervisors, and such other groups or interests as the Superintendent of Public Instruction may deem appropriate. Rating shall be done by or under the supervision of the superintendent of schools or, if so directed by him, the same may be done by an assistant superintendent, a supervisor, or a principal, who has supervision over the work of the professional employe or temporary professional *125 employe who is being rated: Provided, That no unsatisfactory rating shall be valid unless approved by the district superintendent.
The relevant regulations made by the Department of Education (Department) appear at 22 Pa. Code § 351.22 and §351.26. Regulation 351.22, which is entitled "Additional standards for use of the DEBE-333" (the rating form), while discussing how ratings should be completed, does not deal specifically with unsatisfactory ratings. Regulation 351.26, however, which pertains specifically to unsatisfactory ratings, provides as follows:
(a) Two consecutive unsatisfactory ratings of a professional employe shall be necessary to dismiss on the grounds of incompetency. This requirement insures that dismissal is not based on the first instance of unsatisfactory performance but that dismissal follows notice and an opportunity for the professional employe to improve.
(b) The intermediate unit director or district superintendent shall approve and sign the rating form when an unsatisfactory rating is recorded.
(c) Whenever an unsatisfactory rating is given, it shall be supported by anecdotal records. The records shall include specific evidence likely to be important in the event of dismissal.
We have construed this regulation to require "only that unsatisfactory ratings be approved and signed by the district superintendent or intermediate unit director and be supported by anecdotal records. There is no requirement in 22 Pa. Code § 351.26 that unsatisfactory ratings contain numerical scores." Hamburg v. North Penn School District, 86 Pa. Commonwealth Ct. 371, 375, 484 A.2d 867, 869 (1984). Accordingly, under *126 Hamburg, the failure to include numerical scores on the teacher's unsatisfactory ratings could not properly form a basis for the Secretary's reversal.
The Secretary also found, however, that the District ratings were inadequate because there were four incomplete (and, hence, he found, invalid) ratings rather than two complete ones. This determination hinges upon a highly technical reading of Section 1123. The District, for the year 1981, rather than utilizing a single form, which is signed by both the initial rater and the District Superintendent (Dr. Jeannette Brewer), utilized two forms. The school principal rated the teacher here on June 2, 1981. Seven days later Dr. Brewer rated her. The District posits that these two actions, in essence, merged to create one complete rating. For 1982, there was a single rating concurred in by Dr. Brewer. The Secretary rejected the notion that the rating process could be completed in two parts. We, however, can find nothing in Section 1123 or Regulation 351.26 prohibiting this rating procedure. If the time period between the principal's rating and the District Superintendent's rating were greater, the situation might be different. But here only seven days passed between the two events. Cf. Board of Public Education of School District of Pittsburgh v. Pyle, 37 Pa. Commonwealth Ct. 386, 390 A.2d 904 (1978) (where District Superintendent waited thirteen months to approve a rating, he waived his right to approve it).
Finally, the Secretary found fault with the signature process utilized. For 1981, the June 2 rating was signed by the principal. It was not, however, countersigned by the District Superintendent. The District Superintendent's June 9 rating contained her signature, but that signature appeared upon the line for the rater and not upon the line for the District Superintendent. While we recognize this as poor record-making and/or bookkeeping, *127 it is hardly the sort of error which would serve to prejudice the teacher in a substantive manner. She has not alleged any confusion as to who Dr. Brewer was. In any case, Dr. Brewer's signature is clearly accompanied by her job title. Additionally, the teacher has not asserted that any forgery occurred. We believe, therefore, that merely placing a signature on the wrong line is a de minimis error and does not provide a basis for reversal of the dismissal action.
For 1982 there was one rating by the principal with which Dr. Brewer did not concur and which, therefore, was not utilized as a rating for purposes of this dismissal action. (The Secretary erroneously considered this the "third" of four ratings for the 1982 term.) The District Superintendent, however, personally rated the teacher on June 15, 1982 and properly signed the rating form both as the rater and as the District Superintendent. Such dual action is permitted, as is clearly recognized in the rating form promulgated by the Department. See 22 Pa. Code § 351.21. Accordingly, we must hold that the 1982 rating is valid and, of course, find that the Secretary erred in determining that the rating process was so tainted as to render it void.
We will, therefore, reverse the Secretary's order.

ORDER
AND NOW, this 2nd day of September, 1987, the order of the Secretary of Education in the above-captioned matter is reversed.