839 A.2d 1055

Anthony E. BURGER, Appellant,

v.

The BOARD OF SCHOOL DIRECTORS OF the McGUFFEY SCHOOL DISTRICT and the School District of McGuffey, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 9, 2003.

Decided Dec. 31, 2003.

Ronald George Backer, Pittsburgh, for appellant Anthony E. Burger and Philip Haring Spare, Mechanicsburg, for amicus curiae for appellant Pennsylvania Association of School Administrators.

Michael Ira Levin, Huntingdon Valley, for appellee, McGuffey School District.

Before RALPH J. CAPPY, Chief Justice, and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, and LAMB, JJ.

## OPINION

Justice SAYLOR.

Appeal was allowed to consider whether, despite the absence of express statutory authorization, a school board possesses implied authority to suspend a school superintendent accused of improper conduct on an interim basis, without pay and benefits, pending a termination hearing. An associated question presented concerns the availability of mandamus relief in this setting.

In 1998, the Board of School Directors (the "Board") of the McGuffey School District (the "District") elected Anthony Burger ("Appellant") as school superintendent for a five-year term pursuant to Section 1073 of the Public School Code of 1949,[1] 24 P.S. § 10–1073, and the parties executed a written

1. Act of March 10, 1949, P.L. 30 (as amended 24 P.S. §§ 1–101–27–2702) (the "School Code").

contract establishing terms and conditions for the employment. In addition, the Board hired Sheryl Fleck as Appellant's administrative assistant in August of 1998.

On May 1, 2000, Ms. Fleck, through her attorney, submitted a formal complaint to the Board's president, claiming that Appellant had engaged in a pattern of inappropriate sexual behavior that commenced within one week of her hiring. Ms. Fleck alleged that, although she informed Appellant that she was not interested in pursing a personal relationship with him, Appellant made repeated sexual overtures toward her and touched her inappropriately. Ms. Fleck also asserted that, when she continued to rebuff his advances, Appellant engaged in a course of retaliatory conduct, which included, *inter alia,* demoting her; requiring unreasonable relocation of her; requiring her to report to work earlier than other employees; treating her differently than other similarly-situated male employees; setting unreasonable deadlines for the completion of her work; and otherwise interfering with her professional responsibilities.

Upon receipt of this complaint, the District retained an attorney, Bruce Campbell, to investigate the allegations.[2] On August 14, 2000, the District suspended Appellant with pay while Campbell continued his investigation.

As part of that investigation, Attorney Campbell interviewed several witnesses and, at an informal hearing, questioned Appellant, with his attorney present, about the allegations. On October 26, 2000, after completing his investigation, Campbell advised the Board that sufficient evidence existed to proceed with termination proceedings and submitted draft charges.[3] He did not, however, reveal the nature of the

---

2. Ms. Fleck filed a complaint with the Equal Employment Opportunity Commission in October of 2000, containing most of the same allegations concerning Appellant that she raised with the Board. She also indicated that she had lodged complaints about Appellant's conduct with the Board in January of 1999, and in March of 2000.

3. The charges included, *inter alia,* that Appellant: had discriminated against Ms. Fleck and against another teacher in the District; was derelict in his failure to implement and update the District's sexual discrimination policy; had failed to hire a replacement for Ms. Fleck

evidence against Appellant, seeking to minimize or eliminate the possibility that the Board would pre-judge the facts in advance of the actual termination hearing.

Citing to the seriousness of the allegations, public interest considerations, and the need to preserve the District's limited resources, the Board unanimously agreed to suspend Appellant without pay or benefits by resolution dated November 2, 2000. This resolution also provided, *inter alia,* that a formal dismissal hearing would be convened at which Attorney Campbell would prosecute the charges against Appellant following the provision of due and proper notice to Appellant and his attorney; the Board's attorney, Michael Levin, would make rulings on procedural and evidentiary matters and would advise the Board; Ms. Fleck would be granted intervenor status for the hearing; and Appellant would be reinstated with back pay if the charges proved to be unfounded. The termination hearing was scheduled for December 6, 2000.

Following his suspension, but prior to the removal hearing, Appellant filed a complaint in mandamus and a motion for peremptory judgment against the Board and the District (collectively "Appellees"), in the common pleas court, seeking reinstatement to his position or full restoration of his salary and benefits, and requesting that the court prohibit any persons alleging sexual harassment from participating in the formal dismissal hearing. Appellant maintained that the School Code did not authorize the suspension of a superintendent (with or without pay), absent a hearing, nor the intervention of a professional employee in removal proceedings. Rather, Appellant asserted, superintendents may only be "removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well

after he suspended her without pay, despite a critical need for her replacement; had retaliated against a school psychologist by suspending her without pay for disagreeing with him; had admonished administrators against meeting with any Board member or the District's solicitor; and had retaliated against the business manager for scheduling a special Board meeting, at which Ms. Fleck was reinstated with back pay.

as to each member of the board of school directors." 24 P.S. § 10–1080. Appellees filed an answer, which also contained new matter and counterclaims for breach of contract, breach of fiduciary duty, violations under the State Ethics Act, and relief under the Declaratory Judgment Act.[4]

After entertaining oral argument on the parties' motions, the common pleas court precluded Ms. Fleck from intervening at the termination hearing and directed Appellees to rescind Appellant's suspension and to restore full compensation and benefits due under his employment contract. In doing so, the court specified that it was not restricting Appellees from taking any appropriate action following a due process hearing pursuant to Section 1080 of the School Code.

Appellees appealed to the Commonwealth Court, contending that mandamus relief was precluded, as Appellant had an adequate remedy pursuant to Section 752 of the Local Agency Law, 2 Pa.C.S. § 752.[5] Appellees further claimed that the common pleas court erred by compelling them to perform a discretionary duty in a particular manner.[6] In its Rule 1925(a) opinion, the common pleas court initially stated that the pendency of Appellees' counterclaim rendered the appeal interlocutory. See Pa.R.A.P. 341.[7] Alternatively, the court

---

**4.** Appellees averred in their counterclaims, *inter alia*, that, if the charges were true, Appellant would be liable to Appellees for costs and expenses arising from his actions and treble damages under the State Ethics Act, and "for reimbursement or disgorgement of the salary and wages paid to him under his contract in view of the material breach of his agreement with [Appellees]."

**5.** Act of April 28, 1978, P.L. 202. Section 752 provides that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom...." 2 Pa.C.S. § 752.

**6.** In response to the automatic supersedeas in favor of political subdivisions filing appeals, *see* Pa.R.A.P. 1736(b), Appellant requested and received removal of that supersedeas from the common pleas court. Although Appellees challenged the common pleas court's order in this regard, as well as its order precluding Ms. Fleck from intervening in the termination proceedings, these issues are not currently being pursued before the Court.

**7.** However, Rule of Appellate Procedure 311 specifically allows an appeal as of right, without reference to Pa.R.A.P. 341(c), from an order granting peremptory judgment in mandamus. *See* Pa.R.A.P. 311(a)(5).

found that mandamus was the proper method for Appellant to seek relief, as Article X of the School Code governs employment actions relating to superintendents, thus rendering local agency law inapplicable. Addressing Appellees' argument that it compelled them to perform a discretionary duty in a particular manner, the court explained that it merely insured that Appellant's due process rights were protected until Appellees held a termination hearing in compliance with Section 1080.

The Commonwealth Court, however, reversed in a divided, *en banc* opinion. *See Burger v. Board of Sch. Dir. of the McGuffey Sch. Dist.*, 805 A.2d 663, 668 (Pa.Cmwlth.2002) (*en banc* ). Regarding the availability of mandamus relief, at the outset, the majority recognized the extraordinary nature of the writ; its narrow application to circumstances involving performance of a ministerial act or mandatory duty; and the requirements that the plaintiff establish a clear legal right, a corresponding duty in the defendant, and an absence of another adequate and appropriate remedy. *See id.* at 666 (citing *Shaler Area Sch. Dist. v. Salakas*, 494 Pa. 630, 636, 432 A.2d 165, 168 (1981)). The majority, however, found that Appellant failed to meet the last of these requirements (lack of a alternative remedy), because he had the ability to appeal an ultimate, adverse removal decision pursuant to the Local Agency Law.[8] *See id.* at 666, 432 A.2d 165 (citing 2 Pa.C.S. § 752). In so holding, the court distinguished the present situation from others in which it had concluded that mandamus was proper, *see, e.g., Burns v. Uniontown Area Sch. Dist.*, 748 A.2d 1263, 1270 (Pa.Cmwlth.2000) (holding that mandamus was proper where the school board was seeking removal for grounds not enumerated in Section 1080 of the School Code), on the basis that the suspension in this case was issued pursuant to the grounds articulated in Section 1080. *See Burger*, 805 A.2d at 666 (citing 24 P.S. § 10–1080 (establishing, as grounds for removal of a school superintendent,

8. Apparently, the majority recognized that an appeal as of right from the interim suspension would not lie by virtue of the interlocutory character of the decision. *See generally* Pa.R.A.P. 341(a) (interposing finality as a prerequisite to appealability, as a general rule).

"neglect of duty, incompetence, intemperance, or immorality")).

While the Commonwealth Court majority acknowledged Section 1080's silence concerning suspension, it concluded that, when serious charges of misconduct are raised, suspension pending removal is an inherent managerial prerogative. *See id.* at 667 (citing *Board of Educ. of School Dist. of Phila. v. Kushner*, 109 Pa.Cmwlth. 120, 122–23, 530 A.2d 541, 542–43 (1987) (citing *Kaplan v. School Dist. of Phila.*, 388 Pa. 213, 130 A.2d 672 (1957)); *Board of Sch. Dir. of Eastern York Sch. Dist. v. Fasnacht*, 64 Pa.Cmwlth. 571, 577 n. 7, 441 A.2d 481, 484 n. 7 (1982)). In this regard, the majority reviewed the circumstances presented in *Rike v. Commonwealth, Sec'y of Educ.*, 508 Pa. 190, 494 A.2d 1388 (1985), in which a school board suspended a teacher for a time certain, without pay, as a disciplinary measure on a finding of sexual harassment. The majority noted that the relevant provision of the School Code, Section 1129, 24 P.S. § 11–1129, like Section 1080, addresses termination but not suspension. *See Burger*, 805 A.2d at 667. Nevertheless, the *Rike* Court rejected the teacher's argument that the board lacked the power to suspend him, as follows:

That a board of school directors possesses the authority to impose lesser forms of discipline than complete termination of a tenured teacher's contract is by now beyond question. . . . Inherent in the school district's power to employ is the power to control certain activities of teachers, *Kaplan* [, 388 Pa. at 213, 130 A.2d at 672]. As stated by [Chief Justice] Nix in *Neshaminy Fed. Of Teachers v. Neshaminy Sch. Dist.*, 501 Pa. 534, 545, 462 A.2d 629, 635 (1983): "The power to regulate conduct, of course, would be illusory absent a concomitant power to enforce rules through the imposition of some form of discipline."

*Burger*, 805 A.2d at 667 (quoting *Rike*, 508 Pa. at 195, 494 A.2d at 1390–91). Noting that *Rike* and similar cases concerned professional employees, as opposed to school superintendents, the majority nonetheless found their guiding principles applicable, given the similar statutory protections

afforded to both classes of employees with respect to removal. *See id.* at 668.

In a footnote, the majority noted that the exercise of the School Board's prerogative regarding suspension was limited according to an employee's procedural due process interests. *See id.* at 667 n. 8 (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542–43, 105 S.Ct. 1487, 1493–94, 84 L.Ed.2d 494 (1985)). It determined, however, that the Board's approach of employing Attorney Campbell to screen the evidence prior to the without-pay suspension was sufficient to satisfy procedural due process requirements. *See id.*

Judge Pellegrini authored a dissent, in which Judge Simpson joined, disagreeing with the majority's conclusion that a school board has the inherent managerial authority to suspend a superintendent without pay. *See Burger,* 805 A.2d at 669 (Pellegrini, J., dissenting). Initially, the dissent observed that Section 1073(b) of the School Code, 24 P.S. § 10–1073, requires that a superintendent be elected for a term of years, evidencing the Legislature's intent to remove any managerial prerogative of a school board to take an action regarding a superintendent that was not legislatively sanctioned. *See id.* Second, the dissent found no provision of the School Code that authorizes the suspension of a superintendent without pay and a hearing; rather, Section 1080 specifies the sole method for superintendent removal. *See id.* at 669–70. The dissent also disagreed with the majority's conclusion that mandamus was not the proper method for Appellant to seek relief, observing that Appellant asserted non-compliance with the statutorily-mandated removal process delineated in Section 1080. *See id.* at 670. Lastly, the dissent indicated that the majority's reliance on *Rike* was misplaced, as the teacher in that case was afforded a full evidentiary hearing prior to any disciplinary action being taken; here, however, Appellant was suspended without pay or benefits before any hearing, and, again, a superintendent, unlike a teacher, is given a term of office by the School Code. *See id.* at 671.

■ Preliminarily, Appellees assert that the issues presented by Appellant are moot, as the Board has now conducted a hearing pursuant to Section 1080 of the School Code, and Appellant has been formally removed as the District's superintendent. While it is true that no active controversy exists at this time, given the interim character of the Board's action, the issues presented here may repeatedly evade appellate review if the technical rules governing mootness are applied. *See Legal Capital, L.L.C. v. Medical Prof'l Liab. Catastrophe Loss Fund,* 561 Pa. 336, 339 n. 2, 750 A.2d 299, 300 n. 2 (2000) (applying the capable-of-repetition-yet-evading-review exception to the mootness doctrine); *Wiest v. Mt. Lebanon Sch. Dist.,* 457 Pa. 166, 169 n. 1, 320 A.2d 362, 364 n. 1 (1974) (same). Thus, we will proceed to decide the merits of the appeal.

■ On the mandamus question, the Commonwealth Court's decision appears to implement a categorical rule that the availability of a post-termination appeal necessarily constitutes an adequate remedy with respect to a prior, pre-hearing deprivation in the nature of an interim, uncompensated suspension of a public employee. We believe, however, that the adequacy-of-remedy question as applied to such a deprivation requires a more fact-dependent inquiry, as well as a more circumspect approach on the part of the reviewing court, particularly in view of the impact on the employee's livelihood. *Cf. Sorrels, D.O. v. Queen of Peace Hosp.,* 575 N.W.2d 240, 242–43 (S.D.1998) (emphasizing the effect on livelihood interests in selecting appropriate cases for mandamus review). Relevant factors (in addition to the availability of judicial review following the entry of a final, adverse order with respect to the removal), should logically include, *inter alia,* the position held by the public employee; the character of the alleged conduct in relation to that position and its potential impact on the public trust; the interim procedures afforded to the employee; the extent and length of the deprivation; and any other circumstances evidencing excessive hardship. It should also be noted that it remains the plaintiff's burden to establish the inadequacy of any available remedies, as well as

the other requisites to mandamus relief. *See Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (1996).

■ While we therefore disagree with the Commonwealth Court's categorical approach to the adequacy-of-remedy question, the balance of its opinion undercuts Appellant's claim to having satisfied the separate, clear-right-to-relief prerequisite to mandamus. In this regard, we agree with the Commonwealth Court majority that the School Code's removal provision pertaining to superintendents does not divest school boards of their implied authority to suspend such officials accused of serious misconduct, even without pay and benefits, within the constraints of procedural due process. Although Appellant and the Commonwealth Court dissent are correct that this case is distinguishable from *Rike* based on the superintendent's status as a Board-appointed official and a non-voting Board member, *see* 24 P.S. § 10–1081, *Rike's* central reasoning regarding the essential availability of mechanisms for regulating the school environment in light of the potential fallibility of those who administer it, *see Rike*, 508 Pa. at 195, 494 A.2d at 1390–91,[9] applies equally to school teachers and superintendents.[10]

■ In this regard, the express purpose of the School Code is to "establish a thorough and efficient system of public education, to which every child has a right." *Hazleton Area Sch. Dist. v. Zoning Hearing Bd.*, 566 Pa. 180, 192–93, 778 A.2d 1205, 1213 (2001) (quoting *Philadelphia Fed. of Teachers, Local No. 3, AFT, AFL–CIO v. Board of Educ. of Sch. Dist. of*

---

**9.** *Accord Kaplan*, 388 Pa. at 220, 130 A.2d at 676 (recognizing a school district's implied authority to suspend a tenured teacher in circumstances where he "could become an influence inimical to the best welfare of the children"). Although the Commonwealth Court dissent was also correct that *Rike* involved a post-hearing deprivation, this Court's *Kaplan* decision sanctioned a pre-hearing, uncompensated suspension in the teacher setting. *See id.* at 215–16, 130 A.2d at 674.

**10.** Notably, the School Code provides greater protections from dismissal for tenured professional employees than for superintendents. *Compare, e.g.*, Section 1129, 24 P.S. § 11–1129 (requiring a two-thirds board vote for dismissal of a professional tenured employed), *with* Section 1080, 24 P.S. § 10–1080 (requiring only a majority board vote to support the removal of a superintendent).

*Philadelphia,* 51 Pa.Cmwlth. 296, 300, 414 A.2d 424, 426 (1980)). As such, the School Code vests school districts in this Commonwealth with "all necessary powers to enable them to carry out the [the School Code's] provisions." 24 P.S. § 2–211.[11] While school districts are created by statute and, as such, have no power except that which is conferred by statutory grant and necessary implication, *see Mulligan v. School Dist. of Hanover Township,* 241 Pa. 204, 207, 88 A. 362, 362 (1913); *see also Giacomucci v. Southeast Delco Sch. Dist.,* 742 A.2d 1165, 1170 (Pa.Cmwlth.1999), Section 211 of the School Code reflects the General Assembly's explicit and open-ended confirmation of implied powers in furtherance of school districts' essential functions.

Although we hold that a school board may implement interim suspensions with or without pay in appropriate circumstances in the face of allegations of serious misconduct on the part of a superintendent, we agree with the Commonwealth Court that a school board must insure that procedural due process rights are observed when implementing such measures. *See Burger,* 805 A.2d at 667 n. 8.[12] Since, however, Appellant has limited his challenge to questioning the Board's authority to suspend in light of the absence of express statutory authorization, but has not pursued the distinct constitution-

11. Further, a board of school directors "may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all superintendents ... during the time they are engaged in their duties to the district...." 24 P.S. § 5–510.

12. Under Article I, Section 1, of the Pennsylvania Constitution, the requirements of which are not distinguishable from the Due Process Clause of the 14th Amendment of the United States Constitution, *see Pennsylvania Game Comm'n v. Marich,* 542 Pa. 226, 229 n. 6, 666 A.2d 253, 255 n. 6 (1995), a local agency employee has a personal or property right in his employment when he can establish a legitimate expectation of continued employment through either contract or statute. *See Short v. Borough of Lawrenceville,* 548 Pa. 265, 267, 696 A.2d 1158, 1159 (1997) (*per curiam* ). Parenthetically, it is arguable whether a public official's due process interest extends beyond the economic benefits of the position. *See generally Harris v. Board of Educ. of the City of Atlanta,* 105 F.3d 591, 596–97 (11th Cir.1997) (holding that a school superintendent does not have a constitutional right to actually hold his position and execute the duties of the office).

al question,[13] it is not appropriate here for us to review the Commonwealth Court's conclusion that the procedures employed by the Board were sufficient to meet due process requirements. We note only that due process is a flexible concept and, thus, requires procedural protections as each particular situation demands, *see Telang v. Commonwealth, Bureau of Prof'l and Occupational Affairs*, 561 Pa. 535, 540, 751 A.2d 1147, 1150 (2000),[14] and that certainly prolonged impact on livelihood interests would be a weighty factor in the assessment.

The order of the Commonwealth Court is affirmed.

Justice NIGRO files a dissenting opinion in which Justice CASTILLE joins.

Justice NIGRO, dissenting.

I respectfully dissent from the majority because I believe that the Board of School Directors of the McGuffey School District (the "Board") did not have the right to suspend Appellant Anthony Burger without pay or benefits pending his termination hearing and that Appellant properly sought mandamus relief from that action.

Pursuant to the Public School Code (the "Code"), superintendents may only be removed from office based on charges of misconduct or neglect if a majority of the board of school directors votes for such a removal following a hearing. *See* 24 P.S. § 10–1080. In my view, this statutory provision clearly precludes the board of school directors from taking any disciplinary action against a superintendent that effectively results

---

**13.** Indeed, Appellant framed his mandamus petition around the notion that, regardless of the circumstances, he was entitled via statutory mandate to maintain his position and compensation pending a removal hearing and final decision. He did not raise the theory that he was entitled to greater pre-deprivation process (such as a hearing by the actual fact-finder) in relation to any interim suspension, nor has he presented such theory in his appellate brief to this Court.

**14.** For example, in certain circumstances, the United States Supreme Court has found a post-deprivation hearing sufficient to guard due process interests. *See, e.g., Gilbert v. Homar*, 520 U.S. 924, 931, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997).

in a removal without first holding a hearing. As suspending a superintendent and denying him his contractual right to pay and benefits is, for all intents and purposes, a removal, I agree with Judge Pellegrini that the statute prohibits such a suspension absent "a full blown due process hearing."[1] *Burger v. Bd. of Sch. Directors of the McGuffey Sch. Dist.*, 805 A.2d 663, 669–70 (Pa.Commw.2002) (Pellegrini, J., dissenting); *see also Mulligan v. School Dist. of Hanover Tp.*, 241 Pa. 204, 88 A. 362, 362 (1913) (school districts are creatures of the legislature and therefore school districts and their officers only have those powers expressly granted to them by statute or necessarily implied under the statute); *Giacomucci v. Southeast Delco School Dist.*, 742 A.2d 1165, 1170 (Pa.Commw.1999) (as school district is an administrative arm of the legislature, its authority springs only from legislative enactments). Accordingly, in my view, the Board acted outside of its statutory authority when it suspended Appellant from office and took away his pay and benefits without initially holding a hearing on the allegations of misconduct against him.

Moreover, because I believe that the Board's suspension of Appellant violated the Code, I would find that Appellant properly sought mandamus relief from that action. *See e.g., Burns v. Bd. of Directors of Uniontown Area Sch. Dist.*, 748 A.2d 1263, 1269 (Pa.Commw.2000) ("[t]he actions of the re-

1. The majority finds that the board of school directors has the right to make such suspensions pursuant to section 211 of the Code, which vests school districts with powers that are necessary to carry out provisions of the Code. *See* 24 P.S. § 2–211. However, in my view, section 10–1080 limits the board's powers under section 211 insofar as it specifically requires the board to conduct a hearing before terminating a superintendent or effectively terminating him by suspending him without pay. Thus, I do not believe that section 211 alone is dispositive regarding the board's inherent disciplinary powers.

Moreover, contrary to the majority, I do not believe that this Court's decision in *Rike v. Secretary of Educ.*, 508 Pa. 190, 494 A.2d 1388 (1985), in any way implies that the board has the inherent authority to suspend superintendents without pay before holding a hearing. In that case, this Court solely found that the board of school directors had the inherent authority to impose a lesser form of discipline than complete termination of a teacher *after holding a hearing*. *See id.* at 1391. We in no way held that the board could suspend a tenured teacher without pay or benefits absent a hearing.

organized Board to remove Superintendent by a mechanism other than expressly provided by law in the School Code is extraordinary in and of itself"). Further, contrary to the findings of the Commonwealth Court below, I believe that Appellant's ability to appeal from the Board's decision following his termination hearing, which occurred two months after his suspension, was not a complete and adequate remedy from the Board's wrongful deprivation of his salary and benefits for that two month period.

Accordingly, I would reverse the order of the Commonwealth Court and reinstate the order of the trial court granting Appellant his salary and benefits for the two month period before the Board held a hearing and voted to remove him from office.

Justice CASTILLE joins this dissenting opinion.