**In re Antonini**

*James J. Ross,* for plaintiff.
*Douglas R. Nolan,* for defendant.

KUNSELMAN, *P.J.,* April 28, 2005—In his appeal from his dismissal, Enrico Anthony Antonini has also requested a supersedeas. The respondent, Western Beaver Area School District and its board of directors, contends that no statute or procedural rule provides for a supersedeas in such a proceeding and so Antonini is not entitled to a supersedeas. Since neither the Local Agency Law nor the Public School Code provide for a supersedeas, we must determine if a supersedeas is available to Antonini. If so, we must then determine if he is entitled to one. A brief procedural and factual history is necessary to resolve the issue.

Antonini was the superintendent of schools for Western Beaver, having been hired as such in 1994. His initial contract was for a term of five years, which was renewed for an additional term of five years in 1999. On April 13, 2004, Antonini was offered a new contract for another five-year term, effective July 1, 2004, by the board of directors of Western Beaver. Antonini accepted the offer and is, therefore, under contract as superintendent of schools through June 30, 2009.

On October 8, 2004, the school board suspended Antonini with pay and hired outside counsel to investigate certain allegations against him. Antonini responded by filing an action in mandamus alleging that he had been suspended without a hearing, in violation of his due process rights. The court conducted a hearing on Antonini's motion for peremptory judgment. The issue was whether Antonini had been guilty of serious misconduct so as to entitle the school board to suspend him without a due process hearing pursuant to *Burger v. Board of School Directors of McGuffey School District,* 576 Pa. 574, 839 A.2d 1055 (2003).

At the hearing, Western Beaver presented testimony and evidence concerning four allegations of serious misconduct: a handicapped restroom constructed late; the use of Title I funds for teachers' education and training for certification as principal; a five-day notice requirement to board members of interviews of prospective employees; and a claim that tuition reimbursements to teachers from Title I funds exceeded amounts authorized by the collective bargaining agreement.

After hearing, we found that the handicapped accessible restroom was not completed until one week after

school commenced because of a sewer problem, but that other handicapped accessible restrooms were available. We further found that, while Antonini had authorized the expenditure of Title I funds to provide training for teachers toward certification as principal, the expenditures were not disapproved by administrators of the program on both the state and federal level. We further found that Antonini had, in fact, given members of the school board five days notice of interviews of prospective employees but that one member had not actually read the notice on one occasion within the five-day period. Finally, we found that, while the reimbursement authorized by Antonini for payment to teachers for educational expenses from Title I funds did exceed the amounts authorized by the collective bargaining agreement, they were authorized by Title I regulations.

Having made those factual findings, we were compelled to conclude that Western Beaver failed to prove Antonini guilty of serious misconduct. Consequently, we were further required to conclude that Western Beaver was required to comply with section 1080 of the Public School Code, which authorized removal from office, after hearing, for neglect of duty, incompetency, intemperance, or immorality. 24 P.S. §10—1080. Having failed to do so, we found that Western Beaver suspended Antonini without proper cause and without due process and ordered his reinstatement.

Western Beaver appealed our decision to Commonwealth Court and, on Antonini's petition, we vacated the automatic supersedeas provided by Pa.R.A.P. 1736. Western Beaver then petitioned Commonwealth Court to reinstate the automatic supersedeas. However, our opin-

ion in support of our order was adopted by Commonwealth Court and the application by Western Beaver was refused. Antonini was thereafter reinstated as superintendent by Western Beaver at a meeting of the school board.

The special counsel, who had been hired by Western Beaver, directed a letter to Antonini dated November 18, 2004. Therein, he notified Antonini of three allegations of conduct which, if accurate, would constitute grounds for termination. Antonini was directed to appear for a "Loudermill" hearing before special counsel to discuss the three allegations. The three allegations included: (1) use of school funds to pay tuition of two teachers in a principal certification program; (2) failure to complete construction of a restroom to serve the needs of a handicapped student; and (3) authorization of the construction of the restroom without seeking quotes for the work.

Subsequently, Western Beaver gave Antonini notice of a hearing before it on February 9, 2005, to determine if he should be dismissed. The statement of charges included the three allegations set forth in notice of the "Loudermill" hearing, but added a fourth allegation. The fourth allegation was that the tuition payments referred to hereinabove were contrary to the terms of the collective bargaining agreement with the Western Beaver Education Association.

The notice of charges further stated that the conduct complained of:

(1) rendered Antonini incompetent to perform services as superintendent in that he had "exhibited deficiencies in personality, judgment and attitude";

(2) was intemperate;

(3) was immoral;

(4) constituted neglect of duty in his repeated refusal to comply with the terms of the collective bargaining agreement;

(5) constitutes a pattern of unprofessional conduct.

Following a number of hearings, Western Beaver concluded that the charges, individually and in combination, constituted neglect of duty, incompetency, intemperance, immorality and were sufficient to sustain Antonini's termination. Consequently, Western Beaver terminated Antonini on April 12, 2005. Antonini filed his appeal the following day. His request for a supersedeas was entertained but deferred since our local rule requires at least three business days notice of intent to seek such relief.

As we have observed hereinabove, neither the Local Agency Law nor the Public School Code provide for a supersedeas. Antonini relies upon a section of the Judicial Code to establish that right. The Judicial Code provides

"(a) General rule

"There is a right of appeal under this subsection from the final order . . . of every . . .

"(2) Government unit which is an administrative agency within the meaning of Section 9 of Article V of the Constitution of Pennsylvania to the court having jurisdiction of such appeals. An order is appealable under this paragraph notwithstanding the fact that it is not appealable under chapter 7 of title 2 (relating to judicial review). . . .

"(e) Supersedeas.—An appeal shall operate as a supersedeas to the extent and upon the conditions provided or prescribed by law. . . ." 42 Pa.C.S. §5105(a) and (e).

Since section 5105(a)(2) relates to appeals from a government unit which is an administrative agency within the meaning of Section 9 of Article V of our Constitution, we must look at Section 9, Article V. That section provides, in relevant part, that "there shall also be a right of appeal . . . from an administrative agency to a court of record . . . , the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law." Constitution, Article 5, Section 9.

An "administrative agency" is not defined in the Constitution and we have found no statutory definition. However, as Commonwealth Court has observed, Article 5, Section 9 was not self-executing and required legislation to implement its provisions. One of the implementing statutes was the Local Agency Law. *McDonald v. Penn Hills Township School Board,* 7 Pa. Commw. 339, 342, 298 A.2d 612, 613 (1972).

Another law, the Administrative Agency Law, was enacted simultaneously with the Local Agency Law in the Act of 1978, April 28, P.L. 202, No. 53. The Administrative Agency Law is set out in subchapter A of chapter 5 (2 Pa.C.S. §§5501-508) and subchapter A of chapter 7 (2 Pa.C.S. §§701-704). See 2 Pa.C.S. §103(a). The Local Agency Law is set out in subchapter B of chapter 5 (2 Pa.C.S. §§551-555) and in subchapter B of chapter 7 (2 Pa.C.S. §§751-754). See 2 Pa.C.S. §105.

Under the Act, a "Commonwealth agency" is defined as "any executive agency or independent agency." 2

Pa.C.S. §101. A "local agency" is defined as "a government agency other than a Commonwealth agency." 2 Pa.C.S. §101. A "government agency" is defined as "any Commonwealth agency or any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority." 2 Pa.C.S. §101.

Under this definitional scheme, school boards are local agencies, not Commonwealth agencies. *Rike v. Commonwealth, Secretary of Education,* 508 Pa. 190, 194, 494 A.2d 1388, 1390 (1985). We must therefore conclude that Western Beaver is not an administrative agency within the meaning of Section 9 of Article V of the Constitution and therefore 42 Pa.C.S. §5105 does not apply. It follows that there is no right to a supersedeas.

ORDER

For the reasons set forth in the attached opinion, the request of Enrico Anthony Antonini for a supersedeas is denied.